JOHN G. BROOKS v. MIAMI BANK & TRUST CO., et al.

156 So. 757.
Division A.
Opinion Filed September 24, 1934.

*Redfearn & Ferrell,* for Petitioner in prohibition proceeding;

*Stuart MacKenzie,* and *W. F. Parker,* for Respondents.

ELLIS, J.—Pursuant to a suggestion filed in this Court by solicitors for the Miami Bank & Trust Company for a writ of prohibition to be directed to the Circuit Court of the Eleventh Judicial Circuit for Dade County, Florida, and the Judges thereof and John C. Brooks to prevent them from proceeding further in a cause which had been instituted in that Court but which it is claimed had been dismissed, the cause bearing the title of John G. Brooks v. Miami Bank & Trust Company, a banking corporation in its corporate capacity and as Trustee, Biscayne Associates, Inc., a corporation of Florida, City National Bank in Miami, a corporation organized under the National Banking Laws of the United States, Frank L. Herbert, as Receiver of First Mortgage & Bond Company and H. J. Spurway, as Receiver of City National Bank in Miami, an order to show cause why the writ of prohibition should not issue was made on August 1, 1934.

The Relator contended by his petition that the Circuit

Court had lost jurisdiction of the cause because on the 4th day of September, 1933, the Honorable Paul D. Barns, Judge of said court, by order duly entered two days later sustained a motion to dismiss a third amended bill of complaint which J. G. Brooks had caused to be filed in said court in that cause; the motion to dismiss having been made by the City National Bank of Miami and H. J. Spurway as Receiver for that corporation.

It does not appear that the motion was expressly made in behalf of any defendants other than the City National Bank in Miami and Spurway as Receiver although there were three other defendants, named respectively the Miami Bank & Trust Company, Biscayne Associates, Inc., both Florida corporations, and Frank I. Herbert, as Receiver of First Mortgage & Bond Company.

The Judge's order was entitled: In the Circuit Court for Dade County, In Chancery, "John G. Brooks, Plaintiff, v. Miami Bank & Trust Company, *et al.*, Defendants." The language of order is as follows:

"IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED that the motion to dismiss the third amended bill of complaint, filed by the City National Bank in Miami, a United States banking corporation, and H. J. Spurway, as Receiver of City National Bank in Miami, be and the same is hereby sustained.

"DONE and ORDERED in Chambers, at Miami, Florida, this 4th day of September, A. D. 1933.

"PAUL D. BARNS,
*"Circuit Judge."*

We construe the order as referring to the motion to dismiss as interposed by the City National Bank in Miami and its Receiver, H. J. Spurway.

The City National Bank in Miami and H. J. Spurway, as its Receiver, represented in the litigation one interest, that of the City National Bank in Miami.

The third amended bill of complaint was filed July 10, 1933, by leave of court first had and obtained, so the bill recites. It was filed in behalf of Brooks and all other persons similarly situated.

The third amended bill is a lengthy document, requiring, with its several exhibits, approximately eighty-two pages of typewritten matter to state the complainant's case.

An attempt will be made to express as concisely as possible the nature of complaint's cause as set out in the bill because the nature of the suit and the relation of each defendant to the cause stated in the bill may shed some light upon the order sustaining the motion to dismiss the bill and the purpose which was in the court's mind when the motion was sustained.

Brooks was the holder of fifty bonds, of one thousand dollars par value each, of a total issue of two hundred and fifty thousand dollars issued by the First Mortgage & Bond Company on or about October 2, 1923, on which date it entered into an agreement of trust with the Miami Bank & Trust Company, one of the defendants in this case, the purpose of which agreement was to secure the payment of the bonds to be issued by First Mortgage & Bond Company.

The deed contained a form of the bonds to be issued, the form of coupons and trustee's certificate to be attached to the bonds secured by the deed, called a "Collateral Deed of Trust." The Mortgage Company agreed that for the purpose of securing the payment of the bonds issued under the terms of the deed it would deposit with and assign to the Trustee from time to time real estate mortgages or

deeds of trust which were to be held by the Trustee for the equal and proportionate benefit and security of all the bonds issued.

The instrument contained many pertinent covenants on the part of the mortgage company to perform. The value of the collateral security so deposited was by the terms of the instrument always to be maintained to an amount equal to the amount of the principal of the outstanding bonds issued and remaining unpaid. In the event of default in the payment of the bonds or in the observance by the mortgagor of any of the covenants on its part to be performed the Trustee, after a certain period of time had elapsed, could declare the entire indebtedness to be due and payable.

The Trustee accepted the trust and provision was made for its compensation. Provision was made for resignation by the Trustee and the appointment of another Trustee with the approval of the Circuit Judge for Dade County. Other appropriate provisions were made in the instrument for the protection and security of the bondholders which it is unnecessary to mention.

The bill alleges that the principal of the bonds became due in January, 1931; that principal and interest are due upon them and unpaid and no interest had been paid since July, 1928.

The bill contains a list of mortgages for different amounts, aggregating approximately one hundred and twenty-seven thousand dollars in face value which the First Mortgage & Bond Company deposited with the Miami Bank & Trust Company as Trustee under the terms of the agreement prior to the issuing of the bonds.

It is alleged that the City National Bank & Trust Company of Miami, which was organized in May, 1926, entered into negotiations to take over the business of Miami

Bank & Trust Company; that under the terms of an agreement entered into between the two corporations the City National Bank & Trust Company took over the entire properties and business of the Miami Bank & Trust Company and assumed all its "existing liabilities and obligations shown by the books and records" of that company, and under that agreement the new corporation assumed the management and control of the aforementioned trust; that the City National Bank in Miami became the successor of the City National Bank & Trust Company which surrendered to its successor supervision and control of its business including its trust department; that the City National Bank & Trust Company on June 19, 1926, assumed control of the trust and became subject to all its terms and conditions; that on the 16th of June, 1926, the Miami Bank & Trust Company wrongfully surrendered possession of all the mortgages which it had received under the trust agreement, and described in the bill, to the Century Trust Company of Baltimore, Maryland, and the assignment of them was recorded in Dade County.

It is alleged on information and belief that such mortgages were sold to the Maryland Company for the sum of one hundred and thirty-nine thousand seven hundred dollars, and on June 16, 1926, the Trustee had possession of neither the mortgages nor the money received for them, which fact was known to the City National Bank & Trust Company, but on that date the Miami Bank & Trust Company accepted from the First Mortgage & Bond Company in substitution for the mortgages, which had been deposited under the agreement and which were transferred to the Maryland Company, one mortgage from Miami Land & Development Company to Tatum Brothers Real Estate & Develment Company dated June, 1923, payable June, 1933, to

secure the payment of an indebtedness amounting to three hundred and thirty thousand dollars evidenced by five notes. It is alleged that in that transaction the Miami Bank & Trust Company breached its trust agreement. It is alleged that subsequently to the agreement of June 19, 1926, under which the City National Bank & Trust Company acquired the assets of the Miami Bank & Trust Company and assumed the trust business of that company it accepted other mortgages from the First Mortgage & Bond Company which are set forth in the bill; that the trust agreement was again breached in that transaction in the particulars set forth in the bill. Allegations of fraud are made as to that transaction, the sufficiency of them it is not necessary here to determine.

The bill also alleges a series of transactions in which the City National Bank in Miami, Biscayne Associates, Inc., Miami Bank & Trust Company, Tatum and others participated, resulting in the sale of the securities held for the payment of the bonds at a sacrifice, bonds of the First Mortgage & Bond Company purchased at a low price for the benefit of the corporations, upon whom devolved the administration of the trust and retention by the purchasers of a portion of the purchase price at which the mortgage properties were sold was never paid over. Those transactions also resulted in the transfer of the deposit of United States Bonds, with the State Treasurer made by the Miami Bank & Trust Company as the law of the State required, to the City National Bank & Trust Company, which had assumed the execution of the trust, and that Bank subsequently obtained possession of those bonds, commingled them with its own assets and transferred them to the City National Bank in Miami, whereby it is alleged that those corporations have estopped themselves from answering for

an accounting for the breach of the trust and an appropriation of the trust fund.

It is apparent from the entire bill that the complainant sought redress from several corporations alleged to have conspired to destroy the trust fund as originally created to their individual gain but each acting ostensibly within the scope of its individual powers and on its own behalf. The bill brings them all together as co-conspirators to wreck a trust fund, defraud the beneficiaries, of whom the complainant was one, and at the same time seeks to hold the Miami Bank & Trust Company to an accounting on the original trust agreement for the securities deposited, as well as its successors who succeeded to its properties, benefited by the appropriation of them, and by their conduct estopped themselves from denying their liability to the beneficiaries of the trust.

It was to that bill that the City National Bank in Miami and its Receiver, Mr. Spurway, addressed the motion to dismiss on August 7, 1933. There were ninety-four grounds on which the bill was attacked. The brief, of course, refers to the motion as a joint motion to dismiss, but it can hardly be given that designation as the City National Bank in Miami and Mr. Spurway as Receiver are before the court in one and the same interest. They are practically one defendant, as the Receiver succeeds to the interests of the defunct corporation and defends in its interest. Some forty of the grounds of the motion attack the equity of the bill of complaint and the last ground is that the complainant has an adequate remedy at law.

A motion was also made in the name of the Miami Bank & Trust Company, through its solicitor, on the same date to dismiss the bill. No disposition seems to have been made of that motion until February 17, 1934, when the Chancellor

overruled it and allowed the defendant thirty days in which to plead, while the motion of the City National Bank in Miami and Mr. Spurway was sustained on September 4, 1933.

An appeal was taken by complainant from the last order on February 28, 1934, but as the appeal was made returnable on April 15, 1934, which was Sunday, the appeal was dismissed. Brooks v. Miami Bank & Trust Co., 155 South. Rep. 157.

No supersedeas was obtained to the order. Decrees *pro confesso* were entered against Tatum Brothers and Frank L. Herbert, as Receiver of the First Mortgage and Bond Company, on March 14, 1934, and on the 19th of that month the Miami Bank & Trust Company interposed its answer. Other proceedings were being taken, orders for the extension of time in which to plead and for the propounding of interrogatories, when on July 19, 1934, the Miami Bank & Trust Company interposed objections to interrogatories propounded by the complainant to the Miami Bank & Trust Company on the ground that the cause had been finally determined by the order of September 4, 1933, sustaining the motion to dismiss the bill made by the City Bank & Trust Company in Miami and Mr. Spurway as Receiver of that bank.

On July 30, 1934, Honorable Paul D. Barns, Judge, sustained a motion made by the complainant to strike the objections to the interrogatories and allowed the Miami Bank & Trust Company ten days in which to answer them. Thereupon the Miami Bank & Trust Company, on August 1st, submitted to this Court the suggestion for a writ of prohibition as hereinbefore stated.

A motion was made by the complainant Brooks and the Honorable Paul D. Barns to dismiss the cause because it

affirmatively appears from the transcript of the record that it is not a complete transcript of all the proceedings as required by statute. Section 5450 C. G. L., 1927. The answer to that motion was that the matter suggested as a basis for the writ is contained in the transcript of the proceedings which accompanied the suggestion.

The transcript of the proceedings begins with the filing of the third amended bill of complaint by leave of the court. That bill, of course stands in place of all other bills filed in the case prior to that time for the purpose of this cause as this is not an appeal in which prior orders of the court relating to the sufficiency of the original bill and the first and second amended bills are in question. The amended bill is considered as an original bill as it is so framed as to become a substitute for all that has gone before. See 21 C. J. 532.

The transcript of the proceedings shows the order sustaining the motion to dismiss, fails to show that the order was vacated within the period of time when the court may review its own orders on a petition for rehearing. Sec. 4957 C. G. L. 1927; Gasque v. Ball, 71 Fla. 257, 71 South Rep. 329.

An appeal was taken from the order of dismissal but the same was dismissed. The transcript does show that the Chancellor is proceeding in the cause notwithstanding the granting of the motion to dismiss the bill and notwithstanding the fact that there has been no review by him of his own order nor reversal of it by this Court on appeal. So the transcript of the proceedings accompanying the suggestion shows the matter suggested as the basis for the suggestion.

Motion to quash the order to show cause why the writ of prohibition should not issue, to which were subjoined

answers to the rule, were filed in behalf of the two respondents.

These matters came on for oral argument on September 12, 1934.

The order of July 30, 1934, which is taken as evidence of the court's intention to proceed with the cause notwithstanding the order of September 4, 1933, granting the motion to dismiss, and in the absence of an effective appeal or a rehearing by the court of its own order, was made after the court had lost jurisdiction of the cause, if in law and under the rules of court the order was a dismissal of the cause, that is to say, of the third amended bill as to all the parties defendant.

At the same time that the motion to dismiss was made in behalf of the City National Bank in Miami and its Receiver, Mr. Spurway, a motion to dismiss was made in behalf of the Miami Bank & Trust Company. That date was August 7, 1933.

The court on September 4, 1933, made its order on the motion made by the City National Bank in Miami and Mr. Spurway sustaining the motion.

On January 10, 1934, more than four months after that order was made, the complainant moved the court to clarify its order of September 4, 1933, so as to show whether the court intended that the bill should be dismissed in its entirety or only as to the City National Bank in Miami and Mr. Spurway. No action was taken on that motion, if indeed the court had power at that date to amend its order, the period for a review of its own decree was fixed by the statute having passed. But more than a month following the date of the motion to clarify the decree the court undertook by its order to overrule the motion of the Miami Bank

& Trust Company to dismiss the third amended bill of complaint and to order it to plead within thirty days.

It is apparent from the proceedings, as disclosed by the transcript, that the Chancellor intended by the order of September 4, 1933, to dismiss the bill of complaint only as to the City National Bank in Miami and Mr. Spurway, its Receiver.

It is contended, however, by the Miami Bank & Trust Company that, notwithstanding it answered the bill on March 19, 1934, and prayed that it be dismissed with its costs, the court had lost jurisdiction of the cause and had no power to proceed further in it and its answer could not retrieve the jurisdiction it had lost by its order of dismissal.

The question as it appears to us therefore is: was the order of September 4, 1933, a final decree dismissing the bill in its entirety as to all parties or was it a dismissal only as to the movants, the City National Bank in Miami and Mr. Spurway.

We agree to the proposition that after a decree has become a final statement of the court as to what was meant by the order is not permissible. See Taylor v. City of Guelph, 41 Ont. L. 33, 39 Dom. L. R. 416; Hightower v. Bennight, 53 Tex. Civ. App. 120, 115 S. W. Rep. 875; Hartson v. Dill, 151 Cal. 137, 90 Pac. Rep. 530; Morgan v. Jones, 52 Fla. 543, 42 South. Rep. 242.

The latter case applied the maxim: *"Interest rei publicae ut sit finis litium,"* meaning liberally that it concerns the public that there should be an end to litigation. In that case the cause came on to be heard on bill and answer in which a demurrer to the bill as incorporated. The demurrer was sustained and the injunctional order dissolved. A petition for a rehearing was denied in an order in which the court stated that the complainant by the allegations of his

bill shows that he is not entitled to the relief sought. Some months later the complainant filed a petition to amend the decree. The court amended the decree and on appeal this Court reversed the order.

The case is not entirely analogous to the instant case, unless indeed the order of September 4, 1933, was a final decree dismissing the bill in its entirety as to all the parties.

Section 33 of Chapter 14658, Acts of 1931, known as the Chancery Act, substitutes motions to dismiss a bill in chancery for demurrers to the bill which were abolished by the Act. While it is true that an order sustaining a demurrer to a bill in chancery under the old rule was an interlocutory order yet, for most practical purposes, the motion to dismiss is the substitute for and the equivalent of a general demurrer. The effect of the new Act, Section 33, is to prescribe the motion to dismiss as the means of attack upon a bill for every defense in point of law arising upon the face of the bill whether for misjoinder or nonjoinder or by reason of insufficiency of facts to constitute a valid cause of action in equity. The ground in the motion to dismiss urged by the movants here that the complainant had an adequate remedy at law is not a good ground for a motion to dismiss a bill in view of the provisions of Section 75 for transferring to the law court cases erroneously brought in equity. See Chancery Act annotated by McCarthy, Jr., 58, 59, 60.

There is nothing in the Chancery Act, 1931, Section 33, which excludes the idea that one of several defendants may in his exclusive interest move to dismiss a bill whose allegations, however good they may be as to one or more of the remaining defendants, show no ground for the relief sought as to the particular defendant moving the dismissal. It has been the practice generally to entertain demurrers

to a bill interposed in the interest of defendants against whom the allegations of the bill do not entitle the complainant to relief while stating a good cause as to the others. See Louisville & N. R. Co. v. Lynne, 199 Ala. 631, 75 South. Rep. 14; Polack v. Runkel, 67 N. Y. Supp. 753; Arzbacher v. Mayer, 53 Wis. 380, 10 N. W. Rep. 440.

A contrary rule has been announced in Georgia. See McKinney v. Powell, 149 Ga. 422, 100 S. E. Rep. 375; Tillman v. Davis, 147 Ga. 206, 93 S. E. Rep. 201. Although in Ballin & Company v. Ferst & Company, 55 Ga. 546, and Byrom v. Gunn, 111 Ga. 805, 35 S. E. Rep. 649, the general rule was applied.

· The two Georgia cases first cited were decided on the authority of Tate v. Goode, 135 Ga. 738, 70 S. E. Rep. 571, which followed the rule that when the demurrer touched the cause of action against the other defendants, as if the action rested upon an alleged joint contract or where all defendants were alleged to be interested in a common cause as where the complainant could have no equities against the other defendants distinct from his alleged right against the demurrant, in such cases the court sustaining the demurrer might of its own motion have dismissed the bill. See Griffiths v. Griffiths, 198 Ill. 632, text 637, 64 N. E. Rep. 1069.

The principle was also applied in Byington v. Stone, 51 Iowa 317, text 320, 1 N. W. Rep. 647, where the complainant sought to redeem land from a tax sale to the defendant Stone, the other defendants, as shown by the bill, held under him. A demurrer by Stone went to the entire bill, because if there was no right in the complainant to redeem from Stone there was none to redeem from his grantees.

The conditions, however, that existed in the case of Tate v. Goode, *supra,* above mentioned were wholly dissimilar

from the conditions existing in this case as alleged in the bill. The complainant's right to the relief sought against the Miami Bank & Trust Company, the Biscayne Associates, Inc., and the First Mortgage and Bond Company in no wise depends upon a right to subject the City National Bank in Miami to an accounting because of alleged transactions it may have had with the Miami Bank & Trust Company or some successor of it which the complainant considered worked and estopped against the City National Bank. in Miami from denying its accountability in law or equity to the beneficiaries of the trust created by First Mortgage & Bond Company and Miami Bank & Trust Company.

Those corporations are held to be liable for an accounting because of their alleged breach of the trust agreements regardless of whether the City National Bank had become entangled in the mesh of the alleged fraudulent and swindling transactions of the other defendants.

We think that the order sustaining the motion to dismiss as made by the City National Bank in Miami and its Receiver, Mr. Spurway, known as the order of September 4, 1933, related only to the defendant making the motion and did not affect the other defendants who were sought to be charged in a different right.

The motion to quash the rule to show cause is granted and the proceedings dismissed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.