LEE VERTERIE WOFFORD, also known as Tatem Wofford, Jr., and also known as Lee Holder, and PATRICIA WOFFORD, his wife, and WOFFORD HOTEL CORPORATION, v. JOHN B. WOFFORD, *et ux.*

176 So. 499.

En Banc.

Opinion Filed October 18, 1937.

*Frank Smathers,* for Appellants;

*E. F. P. Brigham* and *William K. Whitfield* (of Tallahassee) for Appellees.

CHAPMAN, J.—On November 4, 1936, the appellees, who were plaintiffs below, filed in the Circuit Court of Dade County, Florida, against the appellants, who were the defendants below, their bill of complaint for equitable relief and for a division of valuable real estate and personal property, the joint and beneficial ownerships thereof being in the parties to the suit. The bill prayed for an accounting as between the parties of all moneys coming into their possession from the operation of the business and rents, or otherwise as herein shown. Tatem Wofford, Jr., and John B. Wofford are brothers, and sons of Tatem Wofford, Sr., and Mrs. Ora B. Wofford. Tatem Wofford, Sr., died intestate, during the year 1927 and during the year 1930 Mrs. Ora B. Wofford married a Mr. William S. Buenz, when a separation occurred some few months thereafter. Mrs. Ora B. Wofford died testate on the 16th day of November, 1932, leaving all of her said property to John B. Wofford and Tatem Wofford, Jr., her sons. John B. Wofford married August 16, 1934, and Tatem Wofford, Jr., a short time prior to his mother's death.

The record shows that on March 27th, 1923, Mrs. Ora B. Wofford acquired title to Lot One (1) of Block Four (4) of the Ocean Front Property of the Miami Beach Improvement Company according to the plat thereof recorded in Plat Book Five (5) at pages 7 and 8 of public records of Dade County, Florida. Also other strips adjacent thereto

and on said land was constructed a hotel building, equipment, furniture, furnishings and fixtures, which subsequently became known as the "Wofford Hotel." On May 2, 1923, she caused the business to be incorporated with a capital stock of 3000 shares of the par value of $100.00 per share. The corporation purchased of Mrs. Ora B. Wofford the said hotel property with all equipment, furnishings and fixtures connected therewith and for and in the consideration of $200,000.00, delivered to her therefor 2000 shares of said stock, all being owned and in the name of Mrs. Ora B. Wofford, except one share to her attorney and one to her husband, Tatem Wofford, Sr., for convenience and organization purposes. The Wofford Hotel issued a mortgage or trust indenture on this property for the sum of $250,000.00 and from the business paid and caused the same cancelled of record on March 1, 1929. The Hotel Wofford in June, 1928, was mortgaged the second time for the sum of $240,000.00 and the instrument and bonds were signed by Mrs. Ora B. Wofford as President and John B. Wofford as Secretary of the Wofford Hotel, a Florida corporation. Payments on said bonds or mortgage out of the profits of the business were made from time to time, thereby reducing the same, until January 15, 1934, when the sum of $136,000.00 of the original $240,000.00 remained unpaid.

On January 15, 1934, the Wofford Hotel Corporation, through Tatem Wofford, Jr., President, and John B. Wofford, Secretary, executed a refinance mortgage for the sum of $136,000.00 and simultaneously therewith conveyed their home to the Hotel Corporation, as additional security, for the loan so refinanced, and the said bonds were paid out of the profits of the hotel and the mortgage cancelled of record on June 6, 1936, and all of the property now is

free from liens or other mortgage indebtedness, and its market value is estimated at approximately $350,000.00 to $400,000.00. It has 142 bedrooms, situated at 2400 Ocean Drive, Miami Beach, Florida, and is classified as a "tourist hotel" and its seasons run from November 1st to the following April of each year. It has the capacity and does earn, annually, large net profits.

Likewise Mrs. Ora B. Wofford at the time of her death in her own right owned Lots 14 and 15 in Block Twenty-Six (26), Fisher's First Subdivision of Alton Beach, Miami, Dade County, Florida, and situated thereon is a spacious and pretentious home consisting of five bedrooms with three baths upstairs, with living room, dining room and kitchen downstairs, two-car garage, servant quarters, playground facilities, well located, and valued at approximately $30,000.00.

It will be observed that the legal title to these two pieces of valuable real estate at the time of filing the bill of complaint was vested in the Wofford Hotel Corporation, a Florida corporation. It is alleged in the bill of complaint that the Wofford Hotel Corporation holds the lands and other properties therein described in trust for the beneficial owners, viz.: the plaintiffs and the defendants; that the trust should be terminated and the properties sold and the proceeds arising therefrom divided between the parties; that the stockholders of the corporation, because of friction, dissension and their belligerent attitude rendered the corporation inactive, dormant, and failure on the part of the interested parties to cooperate with each other has caused a condition of stalemate and deadlock to such an extent that the purpose of its organization has ceased to exist.

On November 19, 1936, the defendants filed their answer to the bill of complaint and material, salient, and important

issues following are admitted by the pleading or fully established by the evidence as disclosed by the record, viz.:

1.   Conflicts and distrust between the brothers and their respective wives, charges and counter charges of unfairness and dishonesty, unyielding hostilities and bitterness, fist fights, quarrels and continuous disputes, covetousness, each brother wanted the hotel's management, and these conditions having existed since June, 1934, to the time of filing the suit.   The Special Master in his report to the Court of his findings as to fact touching on this point said: "Unless there is a change in their attitude, due to the animosities and differences between the two brothers and their respective wives, and to their bitter personal feelings for each other, any future management, control and enjoyment of their joint properties by cooperative action, either personal or through the agency of the Wofford Hotel Corporation, as a corporation, is hopeless and apparently impossible."

2.   That John B. Wofford and Tatem Wofford, Jr., as heirs of their father and as legatees under the will of their mother, each acquired and held one thousand of the two thousand shares of the capital stock of the corporation and jointly acquired the said home situated on Washington Street, their title and interest in the home under date of July 28, 1934, was conveyed by the brothers into the Wofford Hotel Corporation.

3.   All bonded indebtedness of the Wofford Hotel Corporation was paid from the net profits arising from the operation of the hotel.

4.   The parties admit the joint ownership of the property involved in the suit.

5.   Prior to dates of marriage Tatem and John B. Wofford as between them had but little friction or dissension.

6. That the sum of $70,000.00 was by the brothers equally divided, each having drawn an annual salary of $7,500.00 and left a balance to the credit of Wofford Hotel.

7. The minute books of the corporation show no formal meeting of the stockholders or directors since 1924. The minutes of the corporation show written notations and proceedings at the direction of Mrs. Ora B. Wofford and blank lines prepared for the necessary signatures, and the corporation from the evidence appears to have been used *only* when it was wanted to issue bonds or a mortgage. Mrs. Ora B. Wofford for all intents and purposes was the Wofford Hotel Corporation as long as she lived and after her death her plan or policy of management was continued by her sons, John B. Wofford and Tatem Wofford, Jr., and later this policy was destroyed by animosities, bitterness, feuds, personal encounters as above shown. The Special Master found as a matter of fact, and the lower Court decreed on final hearing, that because of the dissensions and failure of cooperation between the parties, the Hotel Wofford Corporation as a corporate entity could not function, without an adjustment of the differences of the owners, and the only alternative for the preservation of all the property was to have the same disposed of at judicial sale and the proceeds arising therefrom equitably distributed among the joint and beneficial owners.

Considerable testimony was received on controversial issues, viz.: (a) the expediency or the inexpediency of the expenditure of $10,000.00 for improving the lobby of the hotel; (b) the market value and the annual rental of the home of Mrs. Ora B. Wofford left to her sons; (c) which of the two sons was better qualified to manage the hotel; (d) ownership of one share of the stock previously issued to P. G. Prevatt; (e) construction and interpretation to be

placed on by-laws of the Wofford Hotel Corporation; (f) the legal accuracy or inaccuracy of the minutes of the corporation; (g) dispute over the business expediency of a professional manager of the hotel. The recital of other contested issues is unnecessary for a decision of this cause, but considerable testimony was taken, as the record here shows around 1,400 pages.

The report and recommendations as made by the Special Master concerning a final decree, were excepted to on 17 grounds by counsel for appellants and the same were overruled or denied by the lower Court and a final decree entered holding that the equities were with the complainants, but it was impracticable to divide the property and that the same should be sold under equitable terms, conditions and provisions more accurately stated in detail and expressed in the final decree.

The defendants below, now appellants here, have assigned as error the final decree appealed from and present twenty-five separate assignments of error and in their brief discuss the final decree and the twenty-five assignments of error under seven different questions or reasons why the decree appealed from should be reversed. The different assignments have each been duly considered, and reviewing the entire record, it seems that full justice can be rendered herein by disposing of this cause by answering the following questions: From all the facts established and the law applicable to this cause did the lower court err in making and entering the final decree appealed from? While assignments from 1 to 17, inclusive, are each predicated largely on the order denying the exceptions to the Special Master's report, and assignments of error from 17 to 25, inclusive, bring before the court the legal sufficiency of the bill of complaint filed November 4, 1936, and assignments from

22 to 25, inclusive, present fully the merits of the final decree entered by the lower court.

From a study of the evidence, we are deeply impressed with the business prosperity and heavy accumulations in case of the Wofford Hotel Corporation from January, 1933, to the date of filing the bill of complaint on November 4, 1936. The corporation had an outstanding mortgaged indebtedness in the approximate sum of $136,000.00 when out of the net earning this indebtedness was fully liquidated, all operating expenses of the business paid, John B. Wofford and Tatem Wofford each received annual salaries of $7,500.00, and large sums of money deposited with the banks to such an amount that $70,000.00 was divided between the brothers since the filing of this suit. The record discloses that Tatem Wofford was in the management of the Wofford Hotel during this period. If results can be considered as a criterion of success it must be admitted that Tatem Wofford has made an enviable record. He honestly and faithfully accounted for all moneys coming into his possession while in the management of the different properties and the lower court so held. It is difficult to understand why the joint and beneficial owners of this property desire to terminate such a beneficial management. Counsel for appellants bottom their cause on seven questions, viz.:

"Question 1. Does a Court of Equity have jurisdiction to wind up the affairs of a profitable corporation, at the instance of a stockholder, when there is no fraud or breach of trust on the part of the management, and no injury is resulting to the applicant?

"Question 2. Is mere dissension among stockholders and directors of a solvent corporation sufficient ground to warrant a court of equity in dissolving the corporation and winding up its affairs, in the absence of fraud and breach

of trust, and where the corporation's business is being carried on to the equal advantage of all stockholders?

"Question 3. Is a stockholder who has ratified irregularities in meetings and elections, and has participated in the election of directors and officers, estopped from later questioning the manner of choosing such officers?

"Question 4. Does the failure of the stockholders or Board of Directors to fill a vacancy in the board effect a dissolution of a corporation?

"Question 5. Can an express trust be established solely by parol evidence?

"Question 6. Is it sufficient to allege fraud in general terms?

"Question 7. Can a stockholder and director deliberately refuse to participate in corporate management, with the intent to produce a deadlock, and afterwards, seek aid from a court of equity, on the ground that a deadlock among the stockholders and directors exists?"

We can scarcely appreciate the materiality of each of the above questions in connection with the decree sought to be reversed. This Court is more concerned with the property owned by the parties to this cause, the legal title of which is vested in the Wofford Hotel Corporation, than with the regularity or irregularity of the minutes or the proceeding of the said corporation or the meetings of the stockholders, directors or its president or secretary, or whether or not the acts and doings of either fully conform with the law. It does not appear that Sections 6020, 6021, 6022 and 6023 C. G. L. of 1927 have been violated by the final decree appealed from and likewise no conflicts occur with the utterances of this Court in Tampa Waterworks Co. v. Wood, 97 Fla. 493, 121 Sou. Rep. 789. The final decree by its terms does not dissolve or attempt to dissolve

the Wofford Hotel Corporation, a Florida corporation, but leaves it intact to be used in legalizing other bond issues when and if it becomes necessary so to do as has been its sole purpose continuously since its organization May 2, 1923.

Appellants have assigned as error the order of the court dated June 28, 1937, overruling and denying their exceptions to the Special Master's Report. The other exceptions are numbers from 2 to 17, inclusive, and as each has as its basis some question of fact, we feel justified in considering them as one single assignment. We fail to see how the Special Master or the court below could have reached a conclusion, from the evidence, other than that the primary use of the corporation was to issue bonds: likewise the title was placed in the corporation May 2, 1923, while the possession and management thereof was by Mrs. Ora B. Wofford and her sons: the President and Secretary and stockholders of Wofford Hotel Corporation functioned very little, as such, in the management of the property; the evidence sustains fully the findings of friction and dissension as between the brothers, John B. Wofford and Tatem Wofford: it is difficult to understand from the evidence how the home property could have been held by the corporation other than decreed by the lower court: the sound judgment, wisdom, and conclusion of fact as decreed by the lower court as to a division and sale of the assets of the corporation is supported by the record and it is difficult to conceive of a different finding. The record discloses no reversible error. There is ample proof to sustain the report of facts as made by the Special Master and the findings of the Chancellor below. See Kreher v. Morley, 84 Fla. 121, 92 Sou. Rep. 686.

We now pass to the assignments 18 to 21, inclusive, being an order of the lower court overruling and denying appel-

lants' motion to dismiss the bill of complaint. These assignments are predicated on the different grounds of the motion to dismiss and the motion was incorporated in appellants' answer. The bill of complaint was not without equity and no error was committed in overruling the same. See Brooks v. Miami Bank & Trust Co., 116 Fla. 589, 156 Sou. Rep. 757.

Appellants' assignments from 22 to 25, inclusive, challenge the sufficiency of the evidence shown by the record and the law to support the final decree entered by the lower court. Counsel for appellants in support of question numbered 1, *supra,* cite in their brief Tampa Waterworks Co. v. Wood, 97 Fla. 493, 121 Sou. Rep. 789; People, *ex rel.* Barrett, v. Shurtleff, 353 Ill. 248, 187 N. E. Rep. 271. Also American Pacific Whaling Co. v. Comm'r of Internal Revenue, 74 Fed. (2nd) 613. Also Farmers Gin Co. v. Armstrong (Tex.) 80 S. W. Rep. (2nd) 448. Also Orman v. Bransford Realty Co., 168 Tenn. 70, 73 S. W. (2nd) 713, and other citations. We fail to see or observe the help of these authorities in reaching a conclusion in this case. Counsel for appellants in support of grounds Nos. 2, 3, 4, 5, 6 and 7, *supra,* urge the adoption of the following authorities in the decision of this suit: Lowe v. Copeland, 13 Pac. (2nd) 522, when was said:

"It has been held that where, because of dissensions in its board of directors a corporation cannot function, a court has power to appoint a receiver to preserve its property, but in such a case the proceeding is not directed toward the closing of the affairs of the corporation, nor an attempt to dissolve it, but merely to place its assets in safe hands, as courts are not authorized before dissolution to appoint a receiver for such purposes. Elliot v. Superior Ct., 168 Cal.

727, 145 Pac. Rep. 101; Boyle v. Superior Ct., 176 Cal. 671, 170 Pac. 1140, L. R. A. 1918D 226."

California Fruit Growers Ass'n of Los Angeles v. Superior Court, 8 Cal. App. 711, 97 Pac. Rep. 760; McGuire v. Kaysen McGuire Co., 184 Minn. 553, 239 N. W. Rep. 616, and other citations of the States of Minnesota, Wisconsin, Iowa, Idaho, Michigan and Nebraska. We are not informed whether these decisions turn on the general law applicable to corporations or the statute, or statutes of these different states.

The right of a court of equity to intervene and control the affairs of a corporation where friction, dissension and deadlocks prevail was considered by the Court of Chancery of the State of New Jersey in Sternberg v. Wolff, 56 N. J. Eq. 389, 39 Atl. Rep. 397:

"* * * The two parties to the controversy—Sternberg and his wife on the one side and Wolff and his wife on the other side—are the owners each of one-half of the capital stock. These four individuals are directors of the company, and, by the by-laws, the whole number is necessary to make a quorum for the transaction of business. The dissensions between these two parties—Sternberg and his wife on one side and Wolff and his wife on the other side—have brought the affairs of this company to a deadlock, so far as any corporate action by the board of directors is concerned."

At page 389 the Court adopted the following language from one of its previous decisions:

" 'The power of this court to appoint a receiver of a corporation, either because it has no properly-constituted governing body or because there are such dissensions in its governing as to make it impossible for the corporation to carry on its business with advantage to its stockholders, I think must be regarded as settled * * *' "

The Court likewise adopted the language from its previous decision concerning the law applicable to the case, as follows, at pages 398-399:

" 'With regard to private partnerships, nothing is of more frequent occurrence than the quarrels of partners. If partners quarrel, oust each other from the management, or so conduct themselves that the partnership cannot go on with advantage, it is every day's practice for the court to interfere by injunction and appoint a receiver if necessary. With regard to public companies, I apprehend the same principle is applicable. If a state of things exists in which the governing body are so divided that they cannot act together, and there is the same kind of feeling between the members as there is frequently in the case of private partnerships, it is clearly within the rule of this court to interfere, and it will do so."

It will be observed that the doctrine of equity was extended from partnerships to corporations by the equity court of New Jersey, and now let us consider the law as we conceive it to be as it applies to the case at bar.

Can a court of equity, in its efforts to do justice between litigants, where the title to real and personal property, for the convenience of the beneficial owners thereof, rests in a corporation, defunct for all purposes except when used to issue bonds, look beyond the legal fiction of corporate entity and decree a sale thereof, where a deadlock and stalemate condition exists, and animosities, jealousies, dissensions, hatred, continuous disagreements and personal encounters prevent the stockholders from functiong as a corporation and little or no hope exists for a changed relation on the part of the stockholders?

This Court in considering the power or authority of a court of equity to pierce the veil of corporate entity in the

suit of Biscayne Realty & Insurance Co. v. Ostend Realty Co., 109 Fla. 1, 148 Sou. Rep. 560, text pages 564 and 565, said:

"The object of the original bill was to subject certain property consisting of lands to an indebtedness which in reality and in law was the indebtedness of Clarence M. Busch, although it appeared to be in the name of a corporation of another state, and which ceased its operations as such, disposed of its assets, and to all intents and purposes was defunct; the name being used by the nominal president and owner of practically all its stock. The pleadings interposed by the Ostend Realty Company and Clarence M. Busch in so far as they relate to parcel No. 3 are susceptible to the construction that the transaction in which the land was acquired and out of which the indebtedness to the complainant grew was conducted by the defendant, Clarence M. Busch, in his own behalf and for his sole benefit. So it is contended that the facts alleged in the supplemental bill justify a disregard of the corporate entity of Ostend Realty Company, and compel a recognition of the liability of Clarence M. Busch on the judgment. * * *

"In Morawetz on Private Corporations, volume 1, par. 1, the author, in discussing a corporation as a separate or distinct entity, says: 'In most cases this is a just as well as convenient means of working out the rights of the real persons interested; however, it is essential to a clear understanding of many important branches of the law of corporations to bear in mind distinctly, that the existence of a corporation independently of its shareholders is a fiction; and that the rights and duties of an incorporated association are in reality the rights and duties of the persons who compose it, and not of an imaginary being.' Further on in that excellent work, at Section 227, the author says: 'In equity

the conception of a corporate entity is used merely as a formula for working out the rights and equities of the real parties in interest; while at law this figurative conception takes the shape of a dogma, and is often applied rigorously, without regard to its true purpose and meaning. *In equity the relationship between the shareholders is recognized whenever this becomes necessary to the attainment of justice.'* (Emphasis supplied.)

"Many cases are in line with the views expressed above, where the corporate entity was disregarded and the persons composing it were treated in equity as the real persons in interest and liable for the obligation which they created in the corporate name. See Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co., 16 Md. 456, 77 Am. Dec. 311; Pott v. Schmucker, 84 Md. 535, 36 A. 592, 35 L. R. A. 392, 57 Am. St. Rep. 415; Franklin Min. Co. v. O'Brien, 22 Colo. 129, 43 P. 1016, 55 Am. St. Rep. 118; Buffalo Loan, Trust & Safe-Deposit Co. v. Medina Gas & Electric Light Co., 12 App. Div. 199, 42 N. Y. S. 781; First Nat. Bank of Chicago v. Trebein Co., 59 Ohio St. 316, 52 N. E. 834; Donovan v. Purtell, 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176; State of Ohio, *ex rel.* Watson, v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541. * * *

"In the case of J. J. McCaskill Co. v. United States, 216 U. S. 504, 30 S. Ct. 386, 54 L. Ed. 590, the principle was recognized that the courts will look beyond the corporate form to the purpose of it and to the officers who are identified with that purpose. There is no difference in substance between organizing a corporation to serve in certain transactions the individual purpose of the incorporators and using the name of a defunct corporation to serve the same end. See, also, Martin v. D. B. Martin Co., 10 Del. Ch. 211, 88

A. 612, 102 A. 373; Bennett v. Minott, 28 Or. 339, 39 P. 997, 44 P. 288; Roberts v. W. H. Hughes Co., 86 Vt. 76, 83 A. 807."

See Third Avenue Co. v. Keely, 111 Fla. 46, 149 Sou. Rep. 30; Bellaire Securities Corp. v. Brown, 124 Fla. 47, 168 Sou. Rep. 625; Hirsch v. Lincoln Securities Co., 118 Fla. 164, 160 Sou. Rep. 12; Fickling Properties, Inc., v. Smith, 123 Fla. 556, 167 Sou. Rep. 42. In Mayer v. Eastwood-Smith Co., 122 Fla. 34, 164 Sou. Rep. 684, text 687, the following language is used:

"The overwhelming weight of authority is to the effect that courts will look through the screen of corporate identity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.

7 R. C. L. page 27, par. 4:

"Qualification of General Rule. The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction, introduced for purposes of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical. Thus where a corporation is proceeding at law, or where it is asserting a title to property, or the title to property is involved, the corporation is regarded as a person separate and distinct from its stockholders, or any or all of them; but where it is proceeding in equity to assert rights

of an equitable nature, or is seeking relief on rules or principles of equity; a court of equity will not forget that the stockholders are the real and substantial beneficiaries * * *"

14 Corpus Juris page 59, par. 20:

"A Corporation as a Collection or Association of Individuals.—a.  In General.  Although the doctrine that a corporation is a legal entity and person in the law distinct from the members who compose it will always be recognized and given effect, both at law and in equity, in cases which are within its reason and when there is no controlling reason against it, and although in some cases it seems to have been given effect contrary to reason, it is clear that a corporation is in fact a collection of individuals, who, in the case of modern private corporations, really own its property and carry on the corporate business, through the corporation and its officers and agents for their own profit or benefit, and that the idea of the corporation as a legal entity or person apart from its members is a mere fiction of the law introduced for convenience in conducting the business in this privileged way; and it is now well settled, as a general doctrine that, when this fiction is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law."

It cannot be seriously questioned here that the Chancellor below treated the bill of complaint as a partition suit for the division of property as among the beneficial owners thereof as authorized by our statutes and decisions.  The bill of complaint squares fully with the language used in Camp Phosphate Co. v. Anderson, 48 Fla. 226, text page 239, 37 Sou. Rep. 722, 111 Am. St. Rep. 77, viz.:

"* * * The bill alleges that the United States conveyed by patent to Nancy J. Hatcher, that she died leaving heirs at

law who inherited the property; that some of these heirs conveyed their interests by deed to complainant, and others conveyed their interests by deeds to the defendant; that the complainant and the defendant are in possession of several portions of the land, holding such possession under and claiming title by virtue of the deeds from the heirs. These allegations show legal titles in and to undivided interests in the land in the parties complainant and defendant, derived from heirs who inherited from a common ancestor, and that the parties were in possession of several portions of the property claiming under such title. The quantity or proportionate share held by each is also stated, and from the facts alleged it appears as a matter of law that the parties are tenants in common. This is sufficient to entitle the complainant to partition. *Street v. Benner,* 20 Fla. 700; Keil v. West, 21 Fla. 508."

Dallas v. Sanchez, 56 Fla. 780, 47 Sou. Rep. 871; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 Sou. Rep. 216, 1 A. L. R. 25; Lovett v. Lovett, 93 Fla. 611, text 628, 112 Sou. Rep. 768; Langford v. Brikell, 103 Fla. 672, 138 Sou. Rep. 75; Hobbs v. Frazier, 56 Fla. 796, 47 Sou. Rep. 929, 20 L. R. A. (N. S.) 105, 131 Am. St. Rep. 179, 16 Ann. Cas. 558 (authorizing partition when the interests of the beneficial owners of the property require it).

The possession of all the property was in Mrs. Ora B. Wofford until her death on the 16th day of November, 1932, her sons, now complainant and defendant, assisted her from time to time in the management thereof, and the sons continued in the possession and management after their mother's death until the filing of this suit. There is no dispute as to this and joint ownership is admitted. These heirs are the beneficial owners of all the property and while the title thereto reposes in the corporation, it was placed

there only for the purpose of issuing bonds from time to time and following this theory the sons conveyed the home inherited from their mother to the corporation for the purpose of additional collateral, and during the time they continued in the management and ownership of all the property. The bondholders agreed to release the home when the sum of $10,000.00 was paid on the mortgage so financed by the sons.

The court below found the equities of the cause with the complainants, and that the property was such that it was impossible to divide the same as between the joint and beneficial owners to this suit. The court decreed that the property should be kept intact and sold, and the proceeds arising from the sale thereof divided. There is ample proof in the record to support this finding. This suit is well within the frequently reiterated rules that the findings of the Chancellor on the facts will not be disturbed by an appellate court unless such findings are clearly shown to be erroneous. See Kreher v. Morley, 84 Fla. 121, 92 Sou. Rep. 686. See also: Smith v. Dowling, 81 Fla. 867, 89 Sou. Rep. 315; Travis v. Travis, 81 Fla. 309, 87 Sou. Rep. 762; Commercial Bank of Ocala v. First National Bank, 80 Fla. 685, 87 Sou. Rep. 315; Hill v. Beacham, 79 Fla. 430, 85 Sou. Rep. 147; Smith v. O'Brien, 75 Fla. 252, 78 Sou. Rep. 13; Simpson v. First National Bank, 74 Fla 539, 77 Sou. Rep. 204.

There appearing to be no errors in the record, the decree appealed from is hereby affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.