PORT ST. JOE DOCK & TERMINAL RAILWAY CO. v.
FRED MADDOX.

191 So. 775
Opinion Filed September 26, 1939
Rehearing Denied November 16, 1939

*Adair, Cooper, Osborne & Copp, Henry P. Adair* and *Victor Blue,* for Appellant;

*James H. Finch* and *H. V. McClellan,* for Appellee.

CHAPMAN, J.—On February 28, 1925, the Port Saint Joe Dock & Terminal Railway Company entered into a vendor's and vendee's sales agreement with Fred Maddox involving certain described real estate situated in the City of Port Saint Joe, Florida. The agreement is, viz.:

"THIS AGREEMENT made and entered into this 28th day of February, 1925, by and between Port Saint Joe Dock & Terminal Railway Company, a Florida Corporation, party of the first part, and Fred Maddox, party of the second part, WITNESSETH: That the party of the first part agrees to sell to the party of the second part (2½) Two and one-half acres, more or less, of land in Block C, in the City of

Port Saint Joe, Florida, according to official map No. 11 on file in the Circuit Court's office at Blountstown, Florida: * * *.

"It is mutually understood and agreed as one of the considerations of the purchase price of said land, that the party of the second part agrees that the land described above will be used only for residential purposes, and that no residence shall be constructed on said property having an appraised value of less than $3,500.00. It is further agreed, as a part consideration, by the party of the second part that he will join in the construction of a breakwater and promenade along the water's edge of said land conveyed when it is a general project under the instruction of the City Commission or Council.

"The party of the second part, as a part consideration, agrees to pay therefor the sum of ($1,600.00) One Thousand, six hundred and No/100 Dollars of which ($300.00) Three hundred and No/100 Dollars has been paid in cash, the receipt of which is hereby acknowledged, and the balance to be paid in three equal installments of ($433.33) Four hundred, thirty-three and 33/100 Dollars, due and payable as follows: One note of $433.33 payable on February 28th, 1926; one note of $433.33 payable on February 28th, 1927; one note of $433.33 payable on February 28th, 1928. Said payments being evidenced by the promissory notes of the party of the second part of even date herewith, said notes being due and payable as above stated and bearing interest at the rate of 8% per annum.

"It is specifically understood and agreed between the parties hereto that the title of the above described property remains in the party of the first part until the payments and notes enumerated have all been paid and should default be made in the payment of any note or interest thereon when

due this contract shall automatically cease and terminate and all moneys which may have been paid, with all improvements which may have been placed upon above described property, may be retained by the party of the first part and at its option applied as payment in full for rental of said property and liquidated damages for the non-fulfillment of this contract by the party of the second part.

"It is understood and agreed that when all the payments herein enumerated shall have well and truly been paid at or before maturity together with the interest thereon, that the party of the first part shall convey to the party of the second part by warranty deed the property herein described. And further, the party of the second part shall not commit or permit any strip or waste of said property prior to full payment therefor.

"It is specifically understood and agreed that the party of the second part shall pay all taxes on the above described property for the year 1925 and thereafter."

The land affected consisted of two and one-half acres of waterfront property and comprised the South ½ of Block "C." Maddox made the first cash payment required by the sales agreement and the second payment some time after maturity. The third payment was refused and the amount, with accumulated interest, deposited with a bank and a deed requested of the vendor according to the terms of the sales agreement.

On the land when the sales agreement was entered into was located a small cottage, garage and work shop. The cottage and garage were destroyed by fire. The work shop was left and the defendant constructed a kitchen thereon in 1936 at an estimated cost of $200 or $300, and the defendant and wife made their home on the property. The defendant used the property as a trailer camp, where cars, tractors and campers remained for several months of each year.

The record shows that in February, 1925, when the sales agreement was entered into, Port St. Joe had no industries and its chief asset was its waterfront and owned largely by the plaintiff below, and since February, 1925, several lots adjacent to the water had been sold and no restrictions whatsoever were placed in the conveyance, with but one exception, and the lots sold were located similarly to the property involved in this suit.

The plaintiff below was the owner of considerable land located in the City of Port St. Joe, and from 1925 to 1937 had no program for improving or developing the same, but permitted or allowed wood, bushes, and shrubs to grow thereon until it was decided that a paper mill would be constructed, when plaintiff below pumped sand and thereby added about 30 acres extending out in the bay near the property involved in this suit, and the result thereof was to place said land in a cove or bay, while prior thereto the property had been attractive shore line property suitable for swimming or bathing, but by the construction and operation of the paper mill near the said property, the water was discolored and possibly made poisonous by the application of chemicals released by the paper mill into the water and for this reason the water adjacent to the lot here involved is rendered totally unfit for swimming or bathing purposes. The waterfront property for about one mile southwardly of the property involved in this suit was owned or had been formerly owned by the plaintiff below and no restrictions were imposed by other owners of waterfront property.

It is contended that the pumping in by the plaintiff below of 30 acres of sand in the bay near the property here involved and the location of a large paper mill near said lot has had the effect to make an industrial area out of the waterfront property and changed conditions have occurred,

but on the other hand it is contended that no changes of conditions have occurred since February, 1925. Other material facts exist in the record but the above is a substantial recital of the facts sufficient to dispose of this case.

On the 30th day of December, 1937, Port St. Joe Dock & Terminal Railway Company filed its bill of complaint in the Circuit Court of Gulf County, Florida, against Fred Maddox, praying, among other things, that the sales agreement dated February 28, 1925, and the memorandum dated October 14, 1926, be decreed null and void and that Fred Maddox be required to surrender the same for cancellation, but on the condition that the plaintiff restore to the defendant all moneys by him paid to the plaintiff on the purchase price of the property. The defendant filed an amended answer to the bill of complaint denying the material allegations thereof, and by the prayer of the answer sought affirmative relief, viz.: (a) That the court determine the amount due as a balance on the purchase price agreement by the defendant to the plaintiff; (b) that the plaintiff be required to execute a deed of conveyance in proper form, containing the usual warranties, to the defendant upon payment by him to the plaintiff of the amount adjudged or decreed to be due under the terms of the sales agreement.

Testimony of the parties was taken by an examiner appointed by the court, and on final hearing, the lower court denied plaintiff's prayer: (1) for cancellation or rescission of the sales contract; (2) made finding as to the balance due by the defendant to the plaintiff thereunder; (3) decreed the cancellation of the restrictive clauses in the sales agreement as a cloud on the title of the property; (4) directed a conveyance to be made of the described property by the plaintiff to the defendant. From this decree an appeal has been perfected to this Court and a number of assignments of error are presented and argued for a reversal.

It is contended by counsel for appellant that the contract of sale, *supra,* should be cancelled and rescinded and the *status quo* restored because the defendant violated the restrictions thereof by constructing on the property a building of less value than $3,500.00 and had used the same for business purposes, contrary to the terms thereof and that the restrictive covenants constitute a part of the consideration of purchase price of the property and the final decree appealed from grants specific performance of a contract different from the original contract entered into between the parties. .

The answer of counsel for the appellee to this contention is that since the contract was signed in February, 1925, and up to the time of the filing of the answer, approximately 13 years thereafter, the plaintiff had pumped sand and made 30 acres of land in front of the land here involved, and the effect thereof was to destroy the bathing and swimming value of the land; that a paper mill was by the plaintiff constructed near the property; that other waterfront property was conveyed by the plaintiff *without restrictions;* that the chemicals permitted or allowed to escape from the paper mill and fall into the water have adversely affected the said property so it cannot be used for residential property but is in an industrial area of the city, and that the combination of these changes in contemplation of law is sufficient to cancel the restrictions, *supra,* and as they were superinduced by the plaintiff, it should be required to convey the property with the usual covenants of warranty.

We have carefully examined the many authorities cited by counsel for the appellant and have given due consideration to the testimony bearing on this point. We think the cause of Osius v. Barton, 109 Fla. 556, 147 So. 862, 88 A. L. R. 394,

and Barton v. Moline Properties, 121 Fla. 682, 164 So. 551, 103 A. L. R. 725, control this assignment of error.

It is next contended that there is no change of conditions in the vicinity of Port St. Joe since February, 1925, the date of the sales agreement, as will affect plaintiff's right to enforce the restrictive covenants or will justify their removal and cancellation. One clause in the contract of sale provides, "It is mutually understood and agreed as one of the considerations of the purchase price of said land that the party of the second part agrees that the said land described above will be used only for residential purposes, and that no residence shall be constructed on said property at an appraised value of less than $3,500.00."

The defendant below contended that the plaintiff owned for some 12 years practically all the waterfront property of St. Joseph Bay within the city limits of Port St. Joe and during that time sold some four or five waterfront lots and made no restrictions as to use or the cost of buildings erected there but with one exception. That no program of improvement or beautification of the waterfront adjacent to the lot involved had been adopted or promulgated by the plaintiff from 1925 to 1937; after it was determined to construct the paper mill some 30 acres of land was pumped in which destroyed the beach privileges of the land here involved; contaminated water placed in the bay from the operation of the paper mill.

The lower court from the evidence found and held that it would be inequitable to enforce the restrictions contained in the contract and by decree cancelled the same as a cloud on the title to the land here involved. We have read the evidence as appears in the record and think there is substantial testimony to support the conclusions by the chancellor below. Findings of fact will not be disturbed by an

appellate court unless such findings are clearly shown to be erroneous. See Wofford v. Wofford, 129 Fla. 445, 176 So. 499; Kreher v. Morley, 84 Fla. 121, 92 So. 686; Smith v. Dowling, 81 Fla. 867, 89 So. 315; Travis v. Travis, 81 Fla. 309, 87 So. 762; Commercial Bank of Ocala v. First National Bank, 80 Fla. 685, 87 So. 315; Hill v. Beacham, 79 Fla. 430, 85. So. 147; Smith v. O'Brien, 75 Fla. 252, 78 So. 13; Simpson v. First National Bank, 74 Fla. 539, 77 So. 204.

It is next contended that the plaintiff's right to enforce the restrictions is not affected by the fact that identical restrictions were not placed in other deeds conveying waterfront property. While considerable weight may be involved in this contention, the answer thereto is that the chancellor considered this fact no doubt along with many others in reaching the conclusion that change of conditions from an equitable point of view justified him in holding that the restrictions should be cancelled of record as a cloud upon the title to the land.

We have read the briefs and examined the authorities cited by counsel for the respective parties and have heard oral argument at the bar of this Court, the transcript of the record has been considered and we fail to find reversible error in the record.

The decree appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.