THE THIRD AVENUE COMPANY, *et al.,* v. MAY BODINE KEELY, *et al.*

149 So. 30.

Opinion Filed May 30, 1933.

Petition for Rehearing Denied October 17, 1933.

*Loftin, Stokes & Calkins,* for Appellants;

*Burwell & Sibley* and *Baker & Baker,* for Appellees.

ELLIS, J.—In June, 1929, May Bodine Keely and her husband exhibited their bill in chancery in the Eleventh Judicial Circuit for Dade County against Henry C. Phipps, John S. Phipps and Howard Phipps, The Third Avenue Company, Biscayne Boulevard Company, Palm Beach Company, Phipps Realty Company and Mortgage Discount Company. The five named companies alleged to be Florida corporations.

The bill was a creditor's bill and prayed that certain conveyances of real estate from the Third Avenue Company to Biscayne Boulevard Company and a mortgage given by the Third Avenue Company to Palm Beach Company be set aside and that certain bonds of the City of Miami, held by the Phippses, constitute a fund from which the complainant is entitled to have her claim satisfied; or that the issuing of the bonds to the Phippses was void and that they be enjoined from transferring or assigning them.

The suit rested upon the facts, which were substantially and clearly enough alleged, tending to show the existence of a debt ostensibly due by The Third Avenue Company to Mrs. Keely in the sum of $88,500.00 evidenced by the promissory notes of that Corporation, some of which were made payable to her and others to her husband which she had acquired by endorsement; that in February, 1929, Mrs. Keely obtained a judgment at law against The Third Avenue Company upon four of the notes for the sum of $82,259.95 which

included principal, interest and attorney's fees, and that the judgment is "outstanding and unsatisfied" and that the Third Avenue Company is insolvent, having rendered itself so by its fraudulent conveyances.

Through many allegations, made lengthy by detailed accounts of numerous alleged transactions, the fact is set up in reasonably clear and certain language that the Phippses organized and owned the five corporations; that while their names do not appear as stockholders or officers in any one of the corporations, they were nevertheless the owners of them, dominated, controlled and directed them through others, the employees of the Phippses, who used the names of such employees as officers and owners of the capital stock, although they paid nothing for their stock and constituted as such officers merely mouthpieces or agents for the Phippses who furnished the money for the stock held by their employees and who manipulated, managed and controlled all the activities of the different corporations solely and exclusively for the benefit of the Phippses and to their exclusive advantage; that the names of the corporations were used as a shield to protect from persons with whom the Phippses dealt through the names of the corporations the information of the personal liability of the Phippses; that the nominal stockholders, officers and directors of the corporations are as such mere employees of the Phippses, who pay them for their activities in the said corporations and who are used for superficially maintaining a legal government of the corporations and their legal corporate entities, but in reality to shield and cover the interests of the Phippses in the many transactions intended to be entered into for their exclusive financial benefit and to guard them from personal liability to persons who in the course of such transactions became ostensibly creditors of one or more of

such corporations; that The Third Avenue Company was thus a mere device in the hands of the Phippses for the purpose of giving them absolute control of the property ostensibly purchased by that corporation while protecting them from personal liability for any indebtedness included in the name of the corporate entity; that Mrs. Keely became a creditor of The Third Avenue Company in one or more transactions with that corporation under the conditions set forth above. The bill alleges that The Third Avenue Company by transfers of property, assignments of mortgages and dealings with the City of Miami, all in the interest and for the benefit of the Phippses, disposed of its property and covered its assets so that it became unable to meet its outstanding obligations to the complainant, which obligations in reality were those of the Phippses.

Demurrer to that bill was sustained. An amended bill was filed and a demurrer to that bill was also sustained. A second amended bill was filed and demurrers to that bill were sustained. Then on March 30, 1931, the third amended bill of complaint was filed, to which demurrers were also interposed. Those demurrers were overruled except the demurrer of the Mortgage Discount Company and the demurrer of the Phippses, which were addressed to that part of the bill which sought to charge the "said defendants" with the obligations of The Third Avenue Company which were sustained. From this order all the defendants appealed.

The third amended bill contained in substance the same allegations as the original bill pertaining to the alleged true relation between the Phippses and their corporations, alleged that conveyances were made by The Third Avenue Company while insolvent which conveyances were made for the benefit of the Phippses and when they knew that the

corporation was insolvent and without any consideration moving to the corporation. It is also alleged that in the circumstances not only The Third Avenue Company but the Phippses, the real owners and directors of the corporation, are alike, under the provisions of Chapter 10096, Laws of Florida, 1925, liable for the payment of any deficit found to exist in favor of the complainant upon her claim after the application of the net proceeds of the administration of the assets of the corporation to the payment of the debts.

The allegations of the original bill state a ground for equity relief upon the doctrine announced by this Court in the case of Biscayne Realty and Insurance Co. v. Ostend Realty Company, *et al.,* decided at this term and filed May 24, 1933.

It was there held that if the "stockholders of a corporation enter into a transaction in their individual and private interests and utilize the name of the corporation merely as a convenience for the completion of the transaction, where the legal entity as such has no interest in the matter but the name is used to mislead creditors or perpetrate a fraud upon them, the legal entity in the name of which the transaction was carried will be ignored and the parties held to individual liability." A corporation so used will not be heard to say that property which it acquired ostensibly in its own name and upon its own responsibility is in fact the property of the owners of the corporation for whose sole benefit and individual profit in reality the property was acquired, the name of the corporation being used merely as the *alter ego* of the owners, all of which is concealed at the time from the persons who in such transactions become creditors of the corporation. In such case whether the judgment obtained is against the corporation, or the real owners of it to whose sole benefit the transaction resulted

and for whom and in whose interest it was entered into, is immaterial; in such circumstances the corporation is in fact and in law merely the owners of it under another name. The bill stated such a case as would require a court of equity to look beyond the mere form of the corporate entity to the persons who were the sole beneficiaries of its activities, directed and managed its transactions, used the corporate name at pleasure, incurred financial obligations in its name, conveyed to themselves corporate lands and other property as desired, received the profits, if any, paid out money as the transactions required, and in fact set up and treated the corporate entity as their principal. In such circumstances the interests of the corporation and its owners became so blended, so indistinguishable, as to be identical.

The instant case is distinguished from the Biscayne Realty Insurance-Ostend Realty Company case in no essential element. According to the allegations of the original bill the Phippses merely concealed themselves beneath one more layer of names. Instead of using their own names as stockholders and officers they merely employed others in their service to use theirs, but whom they directed and manipulated as pawns in their complicated and deceptive game of trade. Whether the allegations of the bill can be proved by the complainant is another matter, but the allegations of the bill set up such a case.

The third amended bill, while retaining the theory upon which the original bill rested, injects into the case a new and inconsistent theory. One theory, that of the original bill, is that the named corporations were owned and controlled by the Phippses and that the transactions while carried in the names of different corporations were in fact transactions in which primarily and solely the Phippses were interested, who merely used the corporate names as

and for themselves who were solely interested while the corporations had no interest of property or profit whatever in the transactions. The other theory is that the corporations are separate entities, interested in and owned the properties, to whom and the Phippses The Third Avenue Corporation transferred its property while insolvent to the end that the four other corporations and the Phippses might be preferred over other creditors. That under the provisions of Sec. 43 of Chap. 10096, *supra,* an insolvent corporation is merely a trustee of its assets for the benefit of its creditors and all transfers of its property while insolvent to other creditors to effect a preference of them are void in law. That the Phippses, who were concerned in the violation of that law, became personally liable to the complainant.

The point was made in the demurrer of the Biscayne Boulevard Company and that of The Third Avenue Company but was not argued in the briefs and was therefore abandoned.

The allegations of the third amended bill are sufficient upon which to base the relief sought upon either theory of the case, so the orders appealed from should be affirmed.

The complainant, however, should elect to proceed upon the one theory or the other, and if upon the latter the evidence will probably determine whether the corporations other *than* The Third Avenue Company and the Phippses were creditors of the latter Company within the meaning of the Act.

Order affirmed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

DAVIS, C. J., concurs in part and in the conclusion.

BROWN, J., not participating.

Davis, C. J.—I concur in the conclusion that the third amended bill makes out a case under Section 43 of Chapter 10096, Acts of 1925. I cannot agree to the theory that a corporate entity can be entirely disregarded solely because it is owned by a few persons who use its corporate character as a means of doing business *in the corporate name* to avoid personal liability. The test is whether the *transaction* was personal or corporate; not whether a transaction, admittedly a corporate one in character, was so made to avoid its being a personal transaction. *Avoidance* of personal liability is to be distinguished from *evasion* of such liability.