MIAKKA ESTATES, INC., v. B. L. E. REALTY CORPORATION, a dissolved corporation, MARY M. BLACKBURN, *et al.*

181 So. 423.
Division B.
Opinion Filed March 31, 1938.
Rehearing Denied June 4, 1938.

*John F. Burket,* for Appellant;

*N. G. & John Fite Robertson* and *Paul C. Albritton,* for Appellees.

CHAPMAN, J.—This cause is here on appeal from an interlocutory order dated September 12, 1936, made and entered by a Judge of the Circuit Court of Sarasota County, Florida. It is contended that the lower court erred in overruling and denying a motion of the plaintiff to strike the affirmative portions of an answer filed under date of August 3, 1936, as follows:

"That the Grand International Brotherhood of Locomotive Engineers is an unincorporated voluntary labor association composed of approximately ninety thousand (90,000)

members with its main office at Cleveland, Ohio; that the said organization functions as a voluntary association through its individual members and its duly constituted officials elected at its periodical conventions and through some twenty (20) corporations created and organized for the purpose of carrying into effect its various enterprises, the stock of which corporations is and has been owned by the membership of said organization collectively and not individually; that said voluntary association, during the year 1925, purchased in Sarasota County, Florida, thirty thousand, five hundred eleven and thirty-one hundredths (30,511.31) acres of land in and about the City of Venice, Florida, agreeing to pay for the same the sum of Four Million, Twenty-three Thousand, Ninety-two ($4,023,092.00) Dollars, and the said voluntary association not having any legal entity or status as an organization, caused to be organized the B. L. E. Realty Corporation as a corporation of Florida under the 1925 corporation law to take title to the said property and thereafter did use said corporation for the purpose of developing, building and maintaining the City of Venice, Florida, and developing and maintaining a farming section at or near Venice. Florida. They further aver that all of the capital stock of said corporation was owned, dominated, controlled and directed through the Grand International Brotherhood of Locomotive Engineers by the employees of said voluntary association which used the names of such employees as officers and/or owners of the capital stock of said corporation although they paid nothing for such stock and constituted such officers merely mouthpieces or agents of the said Grand International Brotherhood of Locomotive Engineers which furnished the money for the stock held by their employees and who manipulated, managed and controlled all of the activities solely and exclusively for the

benefit of the association and to its exclusive advantage. They further aver that the name of the defendant corporation was used as a shield to protect from personal liability the membership of said Grand International Brotherhood of Locomotive Engineers, that the nominal officers and directors of the said corporation were merely employees of the membership of said association which paid them for their activities in the said corporation, and who were used for superficially maintaining a legal government of the corporation and its legal entity, but in reality were used to shield and cover the interests of the said association in the many transactions entered into for the exclusive financial benefit of and to guard the membership of said association from personal liability to persons who, in the course of its transactions, became creditors of the said corporation. They further aver that the B. L. E. Realty Corporation was thus a mere device in the hands of the membership of the Grand International Brotherhood of Locomotive Engineers, aforesaid, for the purpose of giving the membership of said association the absolute control of the property purchased by said corporation while protecting them from personal liability for any indebtedness incurred in the name of the corporate entity. The defendants further aver that all moneys coming in to said corporation other than a relatively small amount realized from the sale of lands, were furnished to the said corporation by the said Grand International Brotherhood of Locomotive Engineers, aforesaid, and they further aver that the said association owned, controlled and actuated every act and deed of said corporation for the protection and sole benefit of the members of the said association.

"Defendants further aver that on the 14th day of November, 1925, the defendant corporation became indebted to one Jo Gill as is evidenced by a promissory note of said

date in the sum of Eighteen Thousand, Eight Hundred Eighty-eight and 89/100 ($18,888.89) Dollars, payable on or before three years from said date and on the 10th day of November, 1925, became indebted to the said Jo Gill as is evidenced by a promissory note in the sum of Two Thousand, Nine Hundred Eighty-eight and 89/100 ($2,988.89) Dollars, payable three years after date, which said notes are attached as an exhibit to the testimony in Case No. 1405 on the law side of this Court, wherein Jo Gill was plaintiff and B. L. E. Realty Corporation was defendant, late pending in the Circuit Court in and for Sarasota County, Florida, the record of which is called to the Court's attention and made a part hereof as though pleaded herein *in haec verba*. Defendants further aver that when said notes matured the defendant corporation refused to pay the same and as a result thereof suit was begun on the law side of this Court against the said corporation and as a result thereof final judgment was entered by this Court on said notes on the 17th day of July, 1929. Defendants further aver that on the 21st day of September, 1925; the defendant corporation became indebted to one E. H. Price in the sum of Twenty-nine Thousand, One Hundred Ninety-four and 57/100 ($29,194.57) Dollars which is evidenced by a promissory note due on or before three years from said date, a copy of which is attached to the proof of claim in the case of Bank of Sarasota, a corporation, versus B. L. E. Realty Corporation, being Case No. 1403 on the law side of this Court, the proceedings of which case are called to the Court's attention and prayed to be taken as a part hereof as though pleaded *in extenso*. Defendants further aver that when said note became due the same was presented and payment thereon refused and that the same was protested for non-payment on the 21st day of September, 1928, and as a result thereof suit was brought on the law side of this

Court which terminated in a judgment in favor of the Bank of Sarasota, the holder of said note at the time suit was brought thereon. And these defendants aver that Mary M. Blackburn is the owner of an undivided interest in both of said judgments, and they further aver that J. D. Gill is also the owner of an undivided interest in the judgment of Jo Gill versus B. L. E. Realty Corporation and that Jo Gill has no further interest in said judgment.

"Defendants further aver that in 1927 the defendant B. L. E. Realty Corporation became insolvent and unable to pay its debts and obligations as they became due and payable. And they further aver that during 1929 the said Grand International Brotherhood of Locomotive Engineers caused to be transferred the title or ownership of the unmortgaged assets of the B. L. E. Realty Corporation, including all of its personal and real property in the State of Florida, to the Board of Financial Trustees of the said association, an unorganized committee or body created by the membership of said association at its convention in 1927 for the purpose of handling its financial affairs but without entity except in the name of the individuals who composed its membership and they further aver that the B. L. E. Realty Corporation being the owner of the Venice Water Plant and equipment, in fraud of its creditors under Section 6569, Compiled General Laws of Florida, 1927, at the instance of the Grand International Brotherhood of Locomotive Engineers, caused to be executed the chattel mortgage sought to be foreclosed in this action to the Board of Financial Trustees of the Grand International Division of Brotherhood of Locomotive Engineers without naming in said mortgage the individuals who composed or constituted the Board of Financial Trustees of said association. They further aver that said mortgage purported to be to secure a note given by defendant corporation to said purported

Board of Financial Trustees. Defendants further aver
that said Water Plant purported to have been mortgaged
at the time of the execution of said mortgage, was worth
more in cash than the amount of said mortgage and these
defendants further aver that no actual cash was paid to said
defendant corporation in consideration for the execution of
the same at the time that it was executed.

"These defendants further aver that after the Grand In-
ternational Brotherhood of Locomotive Engineers had se-
cured a transfer of all the tangible or available assets of
the B. L. E. Realty Corporation, that the said association
caused the defendant corporation to be dissolved. And
they further now aver that the said association when it be-
came apparent that the B. L. E. Realty Corporation was
insolvent and after its assets had been transferred, as afore-
said, the said association caused to be organized the plain-
tiff in this case, to-wit, Miakka Estates, Inc., and they
further aver that the relation which the said association had
formerly borne to B. L. E. Realty Corporation has always
existed and now exists with reference to the plaintiff cor-
poration. And they further aver that the said plaintiff
corporation is but a puppet, straw man and apparent legal
fiction for the purpose of being used as such by the Grand
International Brotherhood of Locomotive Engineers for
the purpose of avoiding and preventing creditors of the
defendant corporation from obtaining payment either from
the defendant corporation or the membership of the Grand
International Brotherhood of Locomotive Engineers. And
the defendants further aver and allege that no consider-
ation was paid for the purported transfer of the mortgage
sought to be foreclosed here to Miakka Estates, Inc., and
they allege that said mortgage is a sham, a pretense, and
was given for the purpose of defrauding and defeating the
creditors of the B. L. E. Realty Corporation and especially

the holder of the two judgments heretofore described and set forth, from the collection of their just debts and demands.

"WHEREFORE, the defendants being without remedy in the premises except in a Court of Equity where such causes are properly cognizable and reviewable, these defendants pray that the said mortgage sought to be foreclosed here be set aside as a fraud upon these defendants and that they have such other and further general relief in the premises as to equity shall seem meet and proper."

The grounds of plaintiff's motion are: (a) fails to conform to 1931 Chancery Act; (b) the affirmative relief does not arise out of the subject matter of the suit; (c) defendants' lien is junior and inferior to plaintiff's mortgage; (d) barred by the statute of limitations; (e) the affirmative relief sought is without equity; (f) no fraudulent acts shown. We have examined the pleading moved to be stricken and there was no error committed by the lower court in denying the motion to strike. This Court had a similar question before it in the case of Wofford v. Wofford, 129 Fla. 445, 176 So. 499, when it said:

"Can a court of equity in its efforts to do justice between litigants where the title to real and personal property, for the convenience of the beneficial owners thereof, rests in a corporation, defunct for all purposes except when used to issue bonds, look beyond the legal fiction of corporate entity and decree a sale thereof, where a deadlock and stalemate condition exists, and animosities, jealousies, dissensions, hatred, continuous disagreements and personal encounters prevent the stockholders from functioning as a corporation and little or no hope exists for a changed relation on the part of the stockholders?

"This court in considering the power or authority of a court of equity to pierce the veil of corporate entity in the

suit of Biscayne Realty & Insurance Co. v. Ostend Realty Co., 109 Fla. 1, 148 Sou. Rep. 560, text pages 564 and 565, said:

" 'The object of the original bill was to subject certain property consisting of lands to an indebtedness which in reality and in law was the indebtedness of Clarence M. Busch, although it appeared to be in the name of a corporation of another state, and which ceased its operations as such, disposed of its assets, and to all intents and purposes was defunct; the name being used by the nominal president and owner of practically all its stock. The pleadings interposed by the Ostend Realty Company and Clarence M Busch, in so far as they relate to parcel No. 3 are susceptible to the construction that the transaction in which the land was acquired and out of which the indebtedness to the complainant grew was conducted by the defendant Clarence M. Busch in his own behalf and for his sole benefit. So it is contended that the facts alleged in the supplemental bill justify a disregard of the corporate entity of Ostend Realty Company, and compel a recognition of the liability of Clarence M. Busch on the judgment. * * *

"In Morawetz on Private Corporations, volume 1, par. 1, the author, in discussing a corporation as a separate or distinct entity, says: 'In most cases this is a just as well as convenient means for working out the rights of the real persons interested; however, it is essential to a clear understanding of many important branches of the law of corporations to bear in mind distinctly, that the existence of a corporation independently of its shareholders is a fiction; and that the rights and duties of an incorporated association are in reality the rights and duties of the persons who compose it, and not of an imaginary being.' Further on in that excellent work at section 227, the author says: 'In

equity the conception of a corporate entity is used merely as a formula for working out the rights and equities of the real parties in interest; while at law this figurative conception takes the shape of a dogma, and is often applied rigorously, without regard to its true purpose and meaning. *In equity the relationship between the shareholders is recognized whenever this becomes necessary to the attainment of justice.'* (Emphasis supplied.)

"Many cases are in line with the views expressed above, where the corporate entity was disregarded and the persons composing it were treated in equity as the real persons in interest and liable for the obligation which they created in the corporate name. See Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co., 16 Md. 456, 77 Am. Dec. 311; Pott v. Schumucker, 84 Md. 535, 36 A. 592, 35 L. R. A. 392; 57 Am. St. Rep. 415; Franklin Min. Co. v. O'Brien, 22 Colo. 129, 43 P. 1016, 55 Am. St. Rep. 118; Buffalo Loan, Trust & Safe-Deposit Co. v. Medina Gas & Electric Co., 12 App. Div. 199, 42 N. Y. S. 781; First Nat. Bank of Chicago v. Trebein Co., 69 Ohio St. 316, 52 N. E. 834; Donovan v. Purtell, 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176; State of Ohio, *ex rel.* Watson, v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541. * * *

"In the case of J. J. McCaskill Co. v. United States; 216 U. S. 504, 30 S. Ct. 386, 54 L. Ed. 590, the principle was recognized that the courts will look beyond the corporate form to the purpose of it and to the officers who are identified with that purpose. There is no difference in substance between organizing a corporation to serve in certain transactions the individual purpose of the incorporators and using the name of a defunct corporation to serve the same end. See, also, Martin v. D. B. Martin Co., 10 Del. Ch. 211, 88 A. 612, 102 A. 373; Bennett v. Minott, 28 Or. 330,

39 P. 997, 44 P. 288; Roberts v. W. H. Hughes Co., 86 Vt. 76, 83 A. 807."

See Third Avenue Co. v. Keely, 111 Fla. 46, 149 Sou. Rep. 30; Bellaire Securities Corp. v. Brown, 124 Fla. 47, 168 Sou. Rep. 625; Hirsch v. Lincoln Securities Co., 118 Fla. 164, 160 Sou. Rep. 12; Fickling Properties, Inc., v. Smith, 123 Fla. 556, 167 Sou. Rep. 42. In Mayer v. East-wood-Smith Co., 122 Fla. 34, 164 Sou. Rep. 684, text 687, the following language is used:

"The overwhelming weight of authority is to the effect that courts will look through the screen of corporate identity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose."

7 R. C. L., page 27, par. 4:

"Qualification of General Rule.—The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction introduced for purposes of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical. Thus where a corporation is proceeding at law, or where it is asserting a title to property, or the title to property is involved, the corporation is regarded as a person separate and distinct from its stockholders, or any or all of them, but where it is proceeeding in equity to assert rights of an equitable nature, or is seeking relief on rules

or principles of equity, a court of equity will not forget
that the stockholders are the real and substantial bene-
ficiaries * * *"

14 Corpus Juris, page 59, par. 20:

"A Corporation as a Collection or Association of Indi-
viduals.—a. In General. Although the doctrine that a
corporation is a legal entity and person in the law distinct
from the members who compose it will always be recog-
nized and given effect, both at law and in equity, in cases
which are within its reason and when there is no controlling
reason against it, and although in some cases it seems to
have been given effect contrary to reason, it is clear that a
corporation is in fact a collection of individuals who, in the
case of modern private corporations, really own its prop-
erty and carry on the corporate business, through the cor-
poration and its officers, and agents, for their own profit
or benefit, and that the idea of the corporation as a legal
entity, or person apart from its members is a mere fiction
of the law introduced for convenience in conducting the
business in this privileged way; and it is now well settled,
as a general doctrine, that, when this fiction is urged to an
intent not within its reason and purpose, it should be dis-
regarded and the corporation considered as an aggrega-
tion of persons, both in equity and at law."

It is next contended that the court erred in requiring the
production of records therein named and described for in-
spection of counsel for Mary M. Blackburn. We think
the order assigned as error is fully sustained and author-
ized by Section 49, Chancery Act 1931, viz.:

"SECTION 49. PRODUCTION OF BOOKS AND WRITINGS
FOR INSPECTION OR AT TRIAL.—On the motion of any party,
after reasonable notice, the court may order any other party
or parties to produce books, records and papers containing

or believed to contain evidence pertinent to the cause of action or defense of the movant which are in the possession or control of the party or parties named in the motion and order, either for inspection before or use at the trial, at such time or times and under such reasonable terms and conditions as may be prescribed by the court in its order on such motion."

It is further contended by cross assignments of error that the note and mortgage are void *ab initio* because there is no legal entity known as the Board of Financial Trustees of such association and therefore no person, either actual or artificial, capable of being identified. Counsel have cited a number of authorities to sustain their conclusion. It is possible that evidence can or may be introduced on this issue and for this reason we decline to pass on this particular cross assignment.

We find no error in the record and the decree appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

## ON PETITION FOR REHEARING.

CHAPMAN, J.—On petition for rehearing it is contended that from the facts and circumstances controlling appellant, it is impossible for it to comply with the order of the lower court dated September 12, 1936, regarding the production of "all correspondence between B. L. E. Realty Corporation or officers and the Board of Financial Trustees or the Financial Committee or any member of the Committee relating to the organization of Miakka Estates, Inc." It appears that the facts surrounding the appellant can in a proper showing be presented to the lower court for such

an order as the court below shall believe to be proper and just according to law.

It is next contended that this Court failed to consider and otherwise overlooked assignments of error eight and nine based upon the order of the lower court dated September 12, 1936. The lower court in the exercise of its sound discretion can and no doubt will, when the facts and law controlling each of these assignments are presented, make such an order as shall do justice between the parties. It appears that each of the assignments more or less involve questions of law and fact which can be considered and determined by the lower court.

It is requested that the opinion filed herein be modified or reformed and a ruling of this Court made at this time on the legal sufficiency of the note and mortgage sought to be foreclosed and that the pleadings on this issue are in a chaotic condition. We do not think this Court should as a matter of law, hold the note and mortgage in question void *ab initio*.

The pleadings can be reformed and testimony taken thereunder, and when presented on final hearing, the court can and will determine from the law and evidence each and every question about the note and mortgage sought to be foreclosed. Petition for rehearing denied.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.