129 So.2d 165 (1961)
Charles WILLIAMS and Thelma W. Williams, his wife, Appellants,
v.
AMERICAN CRAFTS, INC., a Florida corporation, et al., Appellees.
No. 59-623.
District Court of Appeal of Florida. Third District.
April 24, 1961.
Rehearing Denied May 15, 1961.
*166 Van Buren Vickery, Miami, for appellants.
A. Budd Cutler and Thomas Horkan, Jr., Miami, for appellees.
PEARSON, Judge.
Charles Williams and Thelma W. Williams, his wife, plaintiffs in the trial court, appeal from a final decree which denied certain prayers of the complaint in an action for rescission of contract, for accounting and for other relief.[1] The plaintiffs had been to a degree successful in their action by the entry of a partial summary decree which: (1) granted the prayer for rescission of their contract with one of the defendants, American Crafts, Inc., (2) entered a money judgment for plaintiffs against the corporation and (3) directed that defendant reconvey to the plaintiffs certain land.
The complaint alleged that the plaintiffs entered into a written agreement with the defendant corporation whereby the plaintiffs were to convey land to the corporation. The agreement also required the plaintiffs to pay the sum of $3,800 to the corporation to be used solely for work and materials to build rental units on plaintiffs' land. After the completion the corporation was to execute an agreement for deed upon the property and return plaintiffs to possession It was alleged that the money and the property were delivered by the plaintiffs to the corporation but that the units were never *167 built. The complaint prayed for the return to the plaintiffs of the land and money. The complaint further alleged that the individual defendants, Michael F. Martin, L.P. Ahrenholz and Martin S. Trop, were individually liable to the plaintiffs for the return of the investment upon the ground that these individuals were the principal officers, directors and beneficial owners of the corporation.
At this stage in the pleadings, after the filing of affidavits, the chancellor entered the partial summary decree above mentioned. During the further progress of the cause the judgment rendered against American Crafts, Inc. was returned nulla bona. Thereafter, and contemporaneously with the further proceedings upon the complaint, the plaintiffs prosecuted proceedings supplementary to judgment in an attempt to subject to their judgment certain alleged assets of the corporation which it was claimed had been transferred to A. Budd Cutler as trustee or as escrow agent.
Prior to final hearing the plaintiffs amended their complaint to allege that L.T. Ahrenholz, one of the individual defendants and a director in the corporation, was holding in his own name certain real estate (designated as the Everglades Terrace property), which he had acquired with funds of the corporate defendant. It developed upon answer of the defendant that Ahrenholz had conveyed the Everglades Terrace property to a corporation known as Lenders Limited, Inc. In his answer L.T. Ahrenholz set forth that Lenders Limited, Inc., purchaser of the subject property, was holding the sum of $3,850 of the proceeds to protect the buyer against a possible lien in favor of the Comptroller of the State of Florida against said property.[2] The answer of L.T. Ahrenholz also admitted receipt of $3,650 from the buyer and set forth that certain of the money had been disbursed to the benefit of the corporate defendant but it was admitted that some of the funds were disbursed to evade threatened criminal action or personal liability. All of said funds are admitted to have been disbursed after the amendment of the complaint in the attempt to reach the Everglades Terrace property.
Thereafter, the cause came on for final hearing on the merits, and also upon a rule to show cause, directed to A. Budd Cutler as trustee, in the proceedings supplementary to judgment. After hearing the court entered a final decree discharging the rule in the supplementary proceedings and denying plaintiffs the further relief for which they had prayed in their complaint. This appeal is from that final decree.
Essentially the question before us at the present time is whether or not the final decree denying further relief was against the manifest weight of the evidence. The relief, to which appellants claim to be entitled and which they were denied, falls into two categories. First, there is the attempt to enforce the claimed statutory liability of the officers and directors of the corporation and second, the attempt to impress a constructive trust upon the proceeds of the sale of the Everglades Terrace property.
In a determination of the legal effect of the evidence as it applies to the plaintiffs' right to relief it is necessary to ascertain whether the evidence reveals that the admitted insolvency of the corporate defendant occurred prior to the transfer of certain properties of the corporation. This is important because the personal liability of the officers and directors of a corporation, under section 608.55, Fla. Stat., F.S.A., is based upon the provision of the statute as follows:[3]

*168 "* * *. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * *. The directors or officers of a corporation who shall violate or be concerned in violation of any provision of this section shall be personally liable to the creditors and stockholders of the corporation of which they shall be directors or officers to the full extent of any loss such creditors and stockholders may respectively sustain by such violation." (Emphasis supplied.)
The only evidence offered at the trial as to the insolvency related to August 27, 1957, when Mr. Ahrenholz withdrew as principal officer and Mr. Trop took over, and consists of the conflicting testimony of Ahrenholz and Trop. Ahrenholz testified that at the time he withdrew from the corporation the corporation was short of working capital and had "deficiencies in the bank account", but it had sufficient total assets to pay its creditors. He also testified that at the same time he left the company he had an agreement with Mr. Trop whereby Trop was to pay the creditors of American Crafts, Inc. Mr. Trop, on the other hand, testified that the bank account was so depleted that checks were "bouncing fast and furious" and that there "wasn't a dime left in the business."
Section 608.55, Fla. Stat., F.S.A., above quoted, is a re-enactment of chapter 10096, section 43, Laws of Florida, 1925. The Supreme Court of Florida has pointed out that this latter section was derived from the Stock Corporation Laws of the State of New York. Denmark v. Ridgell Furniture Co., 117 Fla. 244, 157 So. 489. The leading New York case setting forth the definition of insolvency under this statute was decided after the adoption of the statute in our state, therefore it is only persuasive here. See Duval v. Hunt, 34 Fla. 85, 15 So. 876, 882. Insolvency, as used in the statute,[4] has been defined by the New York courts as follows:
"Insolvency under the statute does not mean excess of liabilities over assets. It means inability to pay debts in the ordinary course of business."
Brown Packing Co. v. Lewis, 185 Misc. 445, 58 N.Y.S.2d 443, 448. See also Brouwer v. Harbeck, 9 N.Y. 589, reported in 3 N.Y.S., where the Court of Appeals of New York, in dealing with a statute in pari materia with this section, held:
"A corporation, like an individual, is insolvent when it is not able to pay its debts. Insolvency means a general inability to answer in the course of business the liabilities existing and capable of being enforced."
We find this definition of insolvency to be in accordance with that generally given when the word is used in statutes forbidding transfers. See cases collected at 29 Am. Jur., Insolvency, section 2; see also section 84 of the same article, and 19 C.J.S. Corporations § 1372.
*169 Under this definition of insolvency a holding that the corporation, American Crafts, Inc., was solvent at the time defendant L.T. Ahrenholz withdrew and defendant Martin S. Trop took over as an officer and director, would be against the manifest weight of the evidence. Therefore, inasmuch as the chancellor made no finding of fact upon insolvency we must presume that he found that the corporation was insolvent at such time, (August, 1957). Under the terms of section 608.55, supra, a director or officer of the corporation who, when the corporation was insolvent, transferred any property of the corporation, with the intent of giving a preference to one creditor over another creditor is personally liable to the unpreferred creditor to the full extent of any loss such creditor may sustain by reason of the transfer.
The proceedings supplementary to judgment which were before the chancellor at the time of the making of the final decree, conclusively demonstrate that the plaintiffs in this cause have suffered loss in that they have a valid outstanding judgment against the corporation upon which they cannot recover by levy because there are no assets of the corporation available. The question then becomes, does the evidence in this case demonstrate that a prohibited transfer was made with the intent as set forth in the statute, and if such transfer was made, what was the extent of plaintiffs' loss, if any, by reason of such transfer.
We have considered those portions of the record upon which the appellants rely in their claim for personal liability against Michael F. Martin. The particular transaction to which appellants refer is one by which the insolvent corporation transferred some of its assets to an organization known as Gibraltar Mortgage Co. Mr. Martin signed as secretary of American Crafts, Inc. It appears that this transaction was arranged between Mr. Trop, the new president and controlling stockholder of American Crafts, Inc., and Mr. Ahrenholz, the former president and controlling stockholder of American Crafts, Inc., and the then president of Gibraltar Mortgage Co. It does not appear that Mr. Martin knew that the transfer was a preference or in any way participated in it except to sign as corporation secretary at the direction of the president. The chancellor therefore committed no error in refusing to find the defendant Martin personally liable to the plaintiffs.
Ahrenholz, Martin and Trop were the principal owners and officers of American Crafts, Inc. about March, 1957. In April, 1957, Mr. Ahrenholz invested, or otherwise used, the funds of American Crafts, Inc. to the benefit of Crown Fence Company and shortly thereafter in return for this received a conveyance of certain land in Dade County, Florida, to L.T. Ahrenholz in his individual name rather than in the name of American Crafts, Inc. This land has been heretofore referred to as the Everglades Terrace property, and we have pointed out that the defendant Ahrenholz sold this land and by answer claimed to have disbursed a portion of the purchase price for the benefit of the creditors of American Crafts, Inc. These plaintiffs are entitled to pursue the proceeds of this sale.
It further appears from the record of this case that L.T. Ahrenholz, as president of American Crafts, Inc., executed a mortgage upon certain corporate property to L.T. Ahrenholz, individually, and his wife, identified in the pleadings as "Mrs. L.T. Ahrenholz". This mortgage was acknowledged before a notary public on August 26, 1957, which was one day prior to the relinquishment of control of the corporation by Mr. Ahrenholz and the advent of Mr. Trop as the controlling officer of the corporation. The testimony of Mr. Ahrenholz is that neither he nor his wife paid any consideration to the corporation for the mortgage. It is his testimony that the mortgage was to secure an indebtedness of the corporation to his brother, and that the mortgage was taken in the name of L.T. Ahrenholz and wife as a matter of convenience *170 to his brother. Nothing other than the testimony of Mr. Ahrenholz substantiates this explanation of the mortgage. It therefore legally appears from the record that the mortgage taken in the name of Ahrenholz and his wife is actually the property of the corporation and that the plaintiffs herein have the right to subject the proceeds of the mortgage to their claim.
As has been previously mentioned it is quite clear that when Mr. Trop took over the corporation in August of 1957, it was insolvent and that he took it over for the purpose of winding up its business affairs and protecting the investors with whom he had dealt personally. Soon after Mr. Trop took over the corporation from Ahrenholz and Martin, Mr. Trop entered into an agreement on behalf of the corporation, which provided among other things for the payment of corporate assets into an escrow fund from which fund certain specified debts of the corporation would be paid. The parties to this agreement were: American Crafts, Inc., Gibraltar Mortgage Co., and M.F. Martin, L.T. Ahrenholz, Martin S. Trop, individually. By this agreement an indebtedness of Gibraltar Mortgage Co. to American Crafts, in the amount of $3,000, plus interest, was recognized, and Gibraltar agreed to pay the amount thereof to the escrow agent. The agreement enumerated certain outstanding obligations of American Crafts, Inc., upon which M.F. Martin, L.T. Ahrenholz and Martin S. Trop might be personally liable. It was provided that the escrow agent should pay the more pressing bills and the accounts of American Crafts, Inc. upon which personal liability of the individual parties was apparent. The extent to which this agreement was carried out is not clear from the record. It is clear that the purport of the agreement was to prefer those creditors on which the individuals named might have a personal liability. As such, the transfers made pursuant to said agreement were in violation of the rights of the plaintiffs and subject the persons making the transfers from the assets of the insolvent corporation to liability to the plaintiffs under the provisions of section 608.55, Fla. Stat., F.S.A.
We have carefully reviewed the record in the light of appellants' additional claims as to the liability of the various defendants, but except as above set forth we find that there is evidence to support the findings of the chancellor that liability has not been made to appear.
For the reasons set forth, the final decree is affirmed in part and reversed in part and the cause remanded to the trial court for an amended final decree, setting forth the personal liability of defendants L.T. Ahrenholz and Martin S. Trop and the extent to which the liability shall appear from the evidence and the right of the plaintiffs to the proceeds from the sale of the Everglades Terrace property all in accordance with the views herein expressed.
Affirmed in part and reversed in part, and remanded with directions.
HORTON, C.J., and CARROLL, CHAS., J., concur.
NOTES
[1] This is the second appearance of this cause. See Williams v. Ahrenholz, Fla.App. 1959, 108 So.2d 304.
[2] See Spector v. Ahrenholz, Fla.App. 1958, 107 So.2d 34; Ahrenholz v. Green, Fla. App. 1961, 127 So.2d 139.
[3] As pointed out in our opinion upon the first appearance of this case, Williams v. Ahrenholz, supra, note [1], the thrust of the complaint as directed to the defendants, L.T. Ahrenholz, Michael F. Martin and Martin S. Trop, is to enforce the liability, if any, of said officers and directors under section 608.55, Fla. Stat., F.S.A.
[4] Although the Florida statute is not in its entirety in the same language as the New York statute, it can be seen that the pertinent part of the statute necessary for interpretation is identical with the New York section, which reads in part as follows:

"No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, * * *." Stock Corporation Law, § 15.