PER CURIAM.
Appellants, defendants below, appeal from a final decree of the Circuit Court for Dade County, the pertinent parts of which provide:
"1. The plaintiff, Mrs. A. V. Watson Abbott, also known as A. V. Abbott, on April 9, 1952, leased to Joel Mark Corporation for a term slightly in excess of 16 years Lots 3 and 4 of Block 2 TOWNSITE OF HARDING, according to the plat thereof recorded in Plat Book 34 at Page 4 of the Public Records of Dade County, Florida. The lease contained a provision to the effect that upon the written request of the lessee, the lessor would join in the execution of one standard institutional mortgage to The Prudential Insurance Company of America, for the purpose of enabling lessee to finance a portion of the consideration of a building to be erected on the demised premises, with a provision that the principal sum of the mortgage shall not exceed $40,000.-00. The individual defendants, Seymour Rubin, Irwin Rubin and James Chapman were all of the stockholders of Joel Mark Corporation and are all of the officers, directors and stockholders of Collins 74 Corp. The mortgage so executed by Joel Mark Corporation, to which the plaintiff, in accordance with said agreement, subordinated her fee simple title, contained a provision to the effect that no suit for the foreclosure of the mortgage as affecting the lessor’s interest shall be commenced until after thirty days’ written notice to her and that the lessor at any time before or after default may pay any sum payable to the mortgagee and that the lessor thereby shall become subro-gated to the mortgagee’s rights in that respect. Joel Mark Corporation by Seymour Rubin, its President and James Chapman, its Secretary, signed the note as did also Seymour Rubin, individually.
“2. On December 10, 1952, Joel Mark Corporation assigned its interest in the aforesaid lease to Seymour Rubin, Irwin Rubin and James Chapman, who took possession of the property and remained in possession thereof until August 1st, 1961, at which time they assigned the lease to Collins 74 Corp. In due course the aforesaid note and mortgage were assigned to American Mortgage & Safe Deposit Company, the President of which is Shepard Broad, who is a member of the firm of attorneys presently appearing on behalf of Seymour Rubin, Irwin Rubin and James Chapman, individually and as Trustees of Joel Mark Corporation and Collins 74 Corp. The rent due under the aforesaid lease on January 1, 1962, was not paid and notice of non-payment was duly given to the defendants entitled to such notice. In addition to such default, the real estate taxes for 1961 were not paid and default was likewise made in the payment of the note secured by the aforesaid mortgage. The complaint prayed that the Court find that the defendants were in default in the terms and provi *779 sions of the lease and declare the term of the said lease to be ended and that the individual defendants and Collins 74 Corp. be required to pay off and discharge the mortgage. The American Mortgage & Safe Deposit Company filed an answer and counter-claim in which it sougt (sic) to foreclose the mortgage for the alleged default. Broadly the issues before the Court were the liability of Collins 74 Corp. and the individual defendants to the plaintiff for the defaults under the lease and of the plaintiff to American Mortgage & Safe Deposit Company on account of the subordination of the fee simple title to the lender’s mort-gate. (sic)
“3. The defendants, Seymour Rubin, Irwin Rubin and James Chapman, and each of them, became the trustees of the assets of the Joel Mark Corporation, a dissolved Florida corporation, as of the time of the dissolution thereof, and as such trustees they were required to marshall and preserve the assets, and to make arrangement for the payment and satisfaction of the debts and obligations, of the dissolved Joel Mark Corporation (F.S.A. 608.30, sub-sec. 3(b). Upon the dissolution of the said corporation, said individuals embarked upon a course of conduct whereby the outstanding obligations of the dissolved Joel Mark Corporation, including the obligation of the mortgage note, might possibly have been satisfied, for they continued to operate the business of subleasing the property which was the subject of the said corporation’s leasehold, collecting the revenues therefrom, and paying out of said revenues such amounts as were required by the terms of the contracts by which the dissolved corporation had incurred its obligations. Thus, these said defendants, by perpetuating the business of the dissolved corporation, likewise perpetuated their trusteeship, and their duty to make provision for satisfaction of the obligations of the dissolved corporation has not yet been fully performed.
“F.S. 608.30(5) [F.S.A.] reads in part:
“' * * * Nothing in this section shall relieve the stockholders from ratable contribution, from any assets received in distribution, toward payment of any valid and enforceable claim made against them as distributees, or against the corporation, or relieve property coming to the hands of the trustees from any valid claim of lien or claim of rights therein, nor prevent service of process upon the trustees as such to enforce any lien or determine any property right after distribution.’ ”
“In 13 Am.Jur. p. 1196 (Corp.) Sec. 1352 it is stated:
“ 'Apart from statutory provisions, which frequently embody the following rule also, the general equitable rule now followed in this country is that upon dissolution of a corporation, the property and assets of the corporation constitute a trust fund for the benefit of its creditors and stockholders. * * * and practically makes obsolete the doctrine as to the extinguishment of the debts owing by and to the corporation in such case.’ ”
“In view of these statements and taking an equitable view of this case, the said defendants did not and, as yet, have not fully performed their duties with respect to providing for the satisfaction of the obligations of the dissolved corporation; and all of the revenues collected by them (by reason of the force, effect and authority 08 (sic) the dissolved corporation’s contract of lease of the subject premises) should have been administered and disbursed in accordance with their duties as such trustees, since their *780 trusteeship merely continued through, over and into their ownership and control of Collins 74 Corp. Thus the said Collins 74 Corp. became, in fact, the alter-ego of, or at least the successor to, said trustees, and, in no way changed the duty of these defendants to administer the funds and assets of such trust for the purpose of satisfaction of the obligations of the dissolved Joel Mark Corporation.
“4. The defendants, Seymour Rubin, Irwin Rubin and James Chapman, while officers of Collins 74 Corp., made withdrawals from the general revenues ■derived by and from the leasehold interest which they had caused Joel Mark Corporation to assign to themselves .and which they, in turn, had assigned to Collins 74 Corp., of large sums of money and had made considerable other unexplained disbursements, for which they are accountable. Likewise, they are liable to the extent of the loss to creditors whose right it was to look to such funds for satisfaction of the obligations of the dissolved Joel Mark Corporation. They are likewise liable to plaintiff under F.S. 608.54 and 608.55 [F.S. A.].
“5. Shepard Broad, as President of the defendant corporation, American Mortgage & Safe Deposit Company, had prior knowledge of the affairs and financial status of Collins 74 Corp; he was a member of the law firm which served the said Collins 74 Corp. in some capacity or other, and received payment of fees for such services in the sum of $171.00 at one time and $1,000.00 in another instance. The said Shepard Broad, prior to his causing American Mortgage & Safe Deposit Company of which company he was President and a 50% stockholder, to purchase and/or acquire the subject mortgage and mortgage note; was told by Seymour Rubin that he was a comaker of the subject mortgage note together with the dissolved Joel Mark Corporation; that Collins 74 Corp., of which Rubin was President, was operating and collecting revenues from the premises which were the subject of the mortgage, under force and authority of the contract of lease between the plaintiff and the dissolved Joel Mark Corporation; that it looked as if the Collins 74 Corp. was going to default upon the obligation of the mortgage note; and that the said Seymour Rubin was but under one remaining obligation, his personal liability as a co-maker of the subject mortgage note. Having such knowledge, and at the request of Seymour Rubin, and without the consent of the mortgagor, plaintiff herein, Shepard Broad, as President of American Mortgage & Safe Deposit Company, caused said company to purchase and acquire the subject mortgage and note for the purpose of relieving Seymour Rubin from personal liability as a co-maker of the said mortgage note, and upon acquisition of said instruments, Shepard Broad, as President of American Mortgage & Safe Deposit Company, did strike the signature of Seymour Rubin from the face of the note and cancelled the said Rubin’s liability thereon as comaker thereof, and it was and is clearly stated in the provisions of the mortgage that the plaintiff’s subordination of the title to the property was done by her as surety and not as an obligor, and that Joel Mark Corporation (Dissolved) and Seymour Rubin were the primary and joint obligors on the obligation of the note. In the light of the provisions of F.S. 675.32 [F.S.A.], the cancellation of the signature of Seymour Rubin, from the face of the note, changed the number and the relationship of the parties, and was, in fact and in law, a material alteration of the instrument. In accordance with the well established principle of law as stated in Vol 2, Fla. Jur., Alt. Instr. § 6, 12, and 18, and authorities there cited, such alteration, *781 having abridged the rights of the plaintiff as surety, operated as a release of the plaintiff’s property from the burden of the mortgage lien. The liability of the individual, Seymour Rubin, by reason of his being a co-maker of the subject note, served as a substantial reason for the said Seymour Rubin to safeguard the plaintiff from loss insofar as the assets of the dissolved Joel Mark ■Corporation could be applied to satisfy the obligations of said dissolved corporation. The increased risk to the plaintiff, by the release of Seymour Rubin .as a co-maker of the note, is well demonstrated by the fact that: Not until the acquisition of the mortgage and the note by the company (of which Shepard Broad was President) had been assured or finally achieved, and Rubin’s signature actually stricken from the face of the said note, did Seymour Rubin, Irwin Rubin and James Chapman withdraw such large sums of money for their own use from its general revenues that Collins 74 Corp. •could not meet the obligations and requirements of the lease and of the subject mortgage obligation. Such action on the part of American Mortgage & 'Safe Deposit Company, by and through Its President, diminished the rights of the plaintiff to recover any losses she might sustain in event of default by the primary obligors, through subrogation ■as provided in the mortgage contract.
“6. The Court rejects the contention of defendants that the joinder of .Seymour Rubin as a signer on the note as a co-maker thereof was obtained through duress and coercion. Assuming that this defense was properly asserted, which it was not, the burden was on the defendant, American Mortgage & Safe Deposit Company to prove it by competent evidence. There is no evidence to support such contention.”
Appellants’ initial contention is that the chancellor erred in holding the Joel Mark Corporation liable in the face of the original provision of the lease, which stated:
“ * * * lessee’s interest may be freely assigned * * * whereupon lessee shall be released and discharged of liability hereunder, and likewise, any subsequent assignee, when assigning, shall be released under the same conditions * * *»
Appellants contend, in December, 1952, when Joel Mark Corporation assigned the lease to the three individual appellants, Joel Mark Corporation was released of any further obligation to appellee-lessor. The chancellor, in his order, found that the dissolved corporation’s stockholders, appellants, Rubin, Rubin & Chapman, as statutory trustees of that corporation[1] were never relieved of that obligation, and subsequent transactions to the detriment of creditors were chargeable to the directors.
In regard to the Joel Mark Corporation, we are of the opinion that it was relieved of its obligation to appellee. The chancellor'relied on'§ 608.30 Fla.Stat., F.S. A., but we think that the transactions involved were too removed in point of time to be chargeable to the dissolved Joel Mark Corporation. The activities complained of by appellee, which resulted in her injury, occurred at least nine years after the Joel Mark Corporation was dissolved. The statute (§ 608.30) provides that a corporation maintains its existence for purposes of responding to claims for three years after its dissolution. The claim must be asserted against the corporation within three years of its dissolution.[2] In the present case, the claim of appellee was not asserted until nine years after dissolution. Accordingly, the trial court erred in failing to dismiss the complaint as to Joel Mark Corporation, and we reverse the decree in this regard.
*782 As to the remainder of the decree, we are in complete accord with the chancellor. ' It is apparent that the chancellor based his decree upon the theory that the individual defendants retained their trustee status, and were thereafter chargeable with the responsibilities therefor. In view of our holding with regard to the Joel Mark Corporation, the individual defendants cannot be impressed with trustee status, and liability based thereon would be erroneous. Inasmuch as, the chancellor arrived at the proper result, even though he based it on the wrong theory, we will not disturb the decree as it is correct.[3]
We completely concur in the chancellor’s finding that the appellee-Collins 74 Corp. was the alter ego of the individual appellants, and that by virtue of their activities the court was entitled to pierce the corporate veil, and impose that corporation’s obligations and liabilities upon its individual stockholders, officers, directors and manipulators.[4] Throughout this proceeding appellants have never denied the liability of Collins 74 Corporation to appellee, but they have most strenuously urged that Joel Mark Corporation and the three individual appellants were relieved of obligation to the appellee pursuant to the lease, by virtue of the previously quoted portion of the lease relieving assignors of any further obligation subsequent to assignment. This proposition as urged by appellants is correct, but it has nothing to do with the determination of this case. The chancellor, with whom we agree, based the liability of the individual defendants not by virtue of their capacity as prior lessees, but by virtue of their capacity as the stockholders, directors, officers and manipulators of the Collins 74 Corporation. The individuals’ liability is-based on the Collins 74 Corporation’s liability under the lease, not on the individual’s obligation under the lease. The individuals, by this decree, are made to answer for the corporate liability under the lease, not their own. The lease provision relieving assignors of liability could not have been meant to relieve of any possible liability, but only that liability accruing by virtue of the lease. Inasmuch as, this is not the basis of the decree it has nothing to do with it.
Further, the chancellor’s finding that the individual defendants were liable to the plaintiff by virtue of §§ 608.54 & 608.55, Fla.Stat., F.S.A. is well taken.[5]
In regard to the chancellor’s action of discharging the mortgage, we are in complete accord, and rather than needlessly burden this opinion we adopt the chancellor’s statement of the law as set out in paragraph 5 of his decree as the appropriate law for this determination.
We have considered appellants’ other contentions and determined them to be without merit.
Accordingly, that portion of the decree holding Joel Mark Corporation liable is reversed, and the complaint dismissed with prejudice as to it. The remainder of the decree is affirmed and the cause remanded for those further proceedings indicated by the chancellor.
Affirmed in part, reversed in part, remanded.

. § 608.30, Fla.Stat., F.S.A.

. Neville v. Leamington Hotel Corporation, Fla.1950, 47 So.2d 8; State ex rel. Security State Bank of Fort Ogden v. Barker, 105 Fla. 432, 141 So. 321.

. Berkman v. Miami National Bank, Fla. App.1962, 143 So.2d 535.

. Adverteets, Inc. v. Sawyer Industries, Fla.1955, 84 So.2d 21; Third Avenue Co. v. Keely, 111 Fla. 46, 149 So. 30.

.See Williams v. American Crafts, Inc., Fla.App.1961, 129 So.2d 165; Levine v. Johnson, 287 F.2d 623 (5th Cir.1961).