Herbert **FREEHLING**, as Trustee in Bankruptcy of Gulfstream Farm Packers, Inc., and Gulfstream Farms, Inc., Plaintiffs-Appellees,

v.

**MICHIGAN REPACKING AND PRODUCE COMPANY**, and Sam Ortisi, et al., Defendants-Appellants.

No. 28228.

United States Court of Appeals, Fifth Circuit.

May 27, 1970.

———————

Raymond E. LaPorte, Miami, Fla., for Michigan Repacking and Produce Co. and Ortisi.

Frank & Strelkow, Charles Neustein, Miami Beach, Fla., for Horton Purchasing Co.

Frank Ragano, Miami, Fla., Goldberg & Lloyd, Fred M. Goldberg, Louisville, Ky., for defendants-appellants.

John L. Britton, Miami, Fla., for plaintiff-appellee Freehling.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

PER CURIAM.

The bankrupts, Gulfstream Farm Packers, Inc., and Gulfstream Farms, Inc., were engaged in growing tomatoes in Florida.

Michigan Repacking and Produce Company and Horton Purchasing Company, corporate appellants, were customers and creditors of the two bankrupt corporations. There are two individual appellants. Sam Ortisi was a stockholder, officer and director of Michigan Repacking and of the two bankrupt corporations. Al Horton was a stockholder, officer and director of Horton Purchasing and of the bankrupt corporations.

Appellant corporations made periodic advances of money to the bankrupts extending over a period of several months. These advances were partially repaid, not in cash but by a series of shipments of tomatoes, the product of the bankrupt's farms, from time to time made to appellant corporations. There was evidence in the District Court that it is usual for packers and shippers of tomatoes to advance growers, such as the bankrupt corporations, to have assured supplies of tomatoes, with the advances repaid by credits against later billings for tomatoes as received from the growers.

The District Court allowed the trustee recovery against the appellants, corporate and individual, of all these repayments, made by the bankrupts to the corporate appellants in the form of tomato shipments.

The trustee proceeds under § 70(e) of the Bankruptcy Act, 11 U.S.C. § 110(e), and the Florida statute, F.S.A. § 608.55. Section 70(e) invalidates as against the trustee any transfer by a bankrupt which is voidable under state or federal law by

a creditor of the bankrupt. There is no claim of fraud. The claim is that there has been a preference voidable under Florida law. We set out in the margin § 608.55.[1] The trustee asserts there was a preference under the second sentence of § 608.55, for which, under the third sentence, the appellant corporations are accountable. And, presumably, he claims that the individual appellants are liable under the last sentence of the section.

The District Judge found that the bankrupt corporations were insolvent under the standards of Florida law because unable to pay their debts in the ordinary course of business, Williams v. American Crafts, Inc., 129 So.2d 165, 168 (Dist.Ct. App., Fla.1961), and that the insolvency was known to all appellants. He found that during the period appellant corporations were being paid by tomato shipments other creditors were not paid. He concluded, relying upon Blank v. Yoo Hoo of Florida Corp., 213 So.2d 464 (Dist. Ct.App., Fla.1968), *vacated on another ground*, 222 So.2d 420 (Fla.1969), that the fact that each appellant corporation received a greater portion of its debt than other creditors of the same class created a preference. The District Court applied an erroneous standard of law, which requires that the case be remanded for consideration under a correct standard.

F.S.A. § 608.55 was originally enacted in 1925. It was based on an earlier New York Statute. Denmark v. Ridgell Furniture Co., 117 Fla. 244, 157 So. 489 (1934). When Florida enacted the New York statute it also adopted "any known and settled construction that had been placed thereon by the courts of the state from which it [was] adopted, in so far as that construction is not inharmonious with the spirit and policy of our own general legislation on the same subject." Duval v. Hunt, 34 Fla. 85, 15 So. 876, 882 (1894); Williams v. American Crafts, Inc., *supra*. Any New York case decided after Florida's enactment of the statute in 1925 is persuasive authority. *Williams, supra.*

Like its New York ancestor, the Florida statute declares that transfer of things of value by an insolvent corporation is void when made "with the intent of giving a preference to any particular creditor over other creditors of the corporation." The Second Circuit, in construing these words, specifically rejected the contention that any payment by an insolvent to a creditor was necessarily an intentional preference, and held that "intent to prefer" is present only

---

1. F.S.A. § 608.55

"No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders. No holder of stock not fully paid in any corporation shall transfer it to any person in contemplation of the corporation's insolvency. Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void except in the hands of a purchaser for a valuable consideration without notice. The directors or officers of a corporation who shall violate or be concerned in violating any provision of this section shall be personally liable to the creditors and stockholders of the corporation of which they shall be directors or officers to the full extent of any loss such creditors and stockholders may respectively sustain by such violation." Laws 1953, c. 28170, § 1.

The transfers in issue were prior to a 1967 amendment to this section, which in any event, made no change material to this case.

when payments are made in contemplation of insolvency and winding up of the business as an impending fact. Intent to prefer is not present when such payments are made with the good faith intention of continuing in business. Cardozo v. Brooklyn Trust Co., 228 F. 333, 334 (2d Cir. 1915). This construction has been followed in numerous New York cases both before and after the 1925 Florida statute: Karasik v. People's Trust Co., 252 F. 324 (E.D.N.Y.1917); Matters v. Manufacturers' Trust Co., 54 F.2d 1010 (2d Cir. 1931); Bielaski v. National City Bank of New York, 58 F.2d 657 (S.D. N.Y.1932); Todarelli v. Visigraph Typewriter Mfg. Co., 34 F.Supp. 762 (S.D. N.Y.1940). We are shown nothing to indicate that the pre-1925 New York interpretation has been rejected by Florida as not harmonious with its legislation on the subject, or that the persuasive effect of the post-1925 New York cases should be ignored.

This case is clearly distinguishable from the intent case cited by the District Court, Blank v. Yoo Hoo of Florida Corp., *supra*. In *Blank* the facts permitted no conclusion other than an intent to prefer: the insolvent sold all its principal assets, then used the proceeds to pay one creditor. A good faith intent to continue in business could not have been present since there was nothing left for the corporation to continue in business with. Payment to one creditor necessarily foreclosed payment to any others since the payment was made with the proceeds from a sale of substantially all assets. Here the bankrupts were continuing their tomato business in spite of insolvency, had not sold their assets, and an intent to prefer cannot be said to exist as a matter of law.[2]

Several other questions require comment. On remand the District Court, as the appropriate forum for consideration in the first instance, may wish to consider whether knowledge alone is sufficient to give rise to personal liability of Ortisi or Horton as an officer or director "who shall violate or be concerned in violating any provision of this section [§ 608.55]." Also, while the pleadings and pretrial stipulations refer to § 70 of the Bankruptcy Act without reference to subsections, the parties on appeal discuss subsection (e). We note, but do not decide, the question of whether § 70(e) reaches the individual liability, if there be such, of Ortisi and Horton if none of the tomatoes went to them.

If the District Court on remand determines that there were preferences to the corporate appellants, it will reach the claim of each that it is entitled to set off against its respective liability the total of the sums owed to it. As to the corporate appellants, the District Court properly held they were not entitled to such set-offs. "[I]n an action by a trustee to recover money paid or property transferred to a creditor by way of preference, the creditor cannot set off against his liability for the return of the preferential payments or transfer the original debt on which they were to be applied." 4 Collier on Bankruptcy, ¶ 68.09 at 893 (14th ed. 1969). See Rotan Grocery Co. v. West, 246 F. 685 (5th Cir. 1917). We express no view on whether the result is the same as to the individuals, if they are found liable, since this has not been considered at the District Court level.

Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.

Costs shall be taxed against the appellee.

---

2. In re Mobilift Equipment of Florida, Inc., 415 F.2d 841 (5th Cir. 1969) is entirely consistent with our conclusion. It recognizes the necessity of proof of intent. In that case there was no question but what the intent existed—the president of the bankrupt testified that, in an effort to hold on to its franchise from the creditor allegedly preferred, it made payments to that creditor with the intent to prefer it over other creditors. In the instant case there was no such proof of intent and the court made no finding that intent existed, but found a preference from the fact of receipt by the two creditor corporations of a greater portion of their debts than other creditors of the same class.